```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


UNITED STATES OF AMERICA,       ) Docket No. 14 CR 447
                                )
                     Plaintiff,)
                                )
             vs.                )
                                )
HAKEEM EL BEY,                  ) Chicago, Illinois
                                ) January 8, 2015
                    Defendant.) 10:00 o'clock a.m.


             TRANSCRIPT OF PROCEEDINGS - STATUS
          BEFORE THE HONORABLE RICHARD A. POSNER


APPEARANCES:

For the Plaintiff:       HON. ZACHARY T. FARDON
                         United States Attorney
                         BY:  MR. CHRISTOPHER P. HOTALING
                              MS. KATHRYN E. MALIZIA
                         219 S. Dearborn St., Suite 500
                         Chicago, Illinois   60604


For the Defendant:       MR. HAKEEM EL BEY, Pro Se


For the Defendant as     JENNER & BLOCK LLP
Standby Counsel:         BY:  MR. GABRIEL A. FUENTES,
                         353 North Clark Street
                         Chicago, Illinois   60654


Court Reporter:          MR. JOSEPH RICKHOFF
                         Official Court Reporter
                         219 S. Dearborn St., Suite 1232
                         Chicago, Illinois   60604
                         (312) 435-5562
              * * * * * * * * * * * * * * * * *

                  PROCEEDINGS RECORDED BY
                   MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED BY COMPUTER
```

1      THE CLERK:  Case No. 14 CR 447, USA vs. El Bey.
2 Status.
3      MS. MALIZIA:  Good morning, your Honor, Kathryn
4 Malizia and Christopher Hotaling on behalf of the United
5 States.
6      MR. HOTALING:  Good morning, your Honor.
7      THE COURT:  Good morning.
8      So, this is a status conference in the United States
9 vs. El Bey.
10      I have read Mr. El Bey's affidavit of truth that was
11 filed on the 30th, and I thought I might say a little about
12 that.  But I'd also like to go over with you the dates of
13 future filings and remind everybody that on January 26th, a
14 number of pretrial filings are due.
15      Motions in limine.  So, these would be motions filed
16 in advance of the trial where you might, for example, want to
17 bar some kind of evidence that you thought was improper or
18 confusing and try and make any alterations in what the trial
19 process would be like.
20      So, another thing due on the 26th would be a list of
21 questions for potential jurors.  So, there's a procedure -- I
22 don't know why they use this Latin stuff; it's called voir
23 dire -- in which a bunch of potential jurors are brought in
24 and the lawyers -- or the plaintiff in this -- the defendant
25 in this case doesn't have a lawyer -- have a chance to present

1  questions to potential jurors that might indicate they were
2  biased or incompetent or what have you.
3  　　　　　Now, I will question the jurors, but you'll have a
4  chance on January 26th to submit questions which you'd like me
5  to ask the jurors.  I'll decide what to ask, but I would
6  appreciate your suggestions.
7  　　　　　Another thing that's due on the 26th would be
8  proposed instructions to the jury.  So, at the end of the
9  trial, when the jury is, you know, about to deliberate and
10 deliver a verdict, I have to give the jury instructions on the
11 law and what they have to be thinking about.  So, I will do
12 that, but I appreciate having proposals for the instructions
13 from the parties.
14 　　　　　It also would be useful if the opponents could agree
15 on how I should explain the case to the jury before I start
16 asking them questions about it.  I have to tell them what the
17 case is about.
18 　　　　　And, finally, for January 26th, I need to have a list
19 of the names of the party -- well, I have the parties, the
20 United States and Mr. El Bey; but, also, the witnesses,
21 because I have to make sure that the jurors are not, you know,
22 personal friends of any of the witnesses.
23 　　　　　So, that is January 26th.
24 　　　　　So, on February 9th, we will have our last pretrial
25 conference and I will rule on whatever motions and instruction

1  issues and what I am going to ask at the questioning of the
2  jurors, and so on.  And, then, the trial will begin March 2nd.
3           Does the government -- I assume; I want to check --
4  do you want the time under the Speedy Trial Act excluded until
5  the trial date?
6           MS. MALIZIA:  Yes, your Honor.  I believe your last
7  minute order did exclude time.
8           THE COURT:  Excuse me?
9           MS. MALIZIA:  I believe your last minute order did
10 exclude time --
11          THE COURT:  Okay.
12          MS. MALIZIA:  -- up until the trial date.
13          THE COURT:  Right up to the trial.  Okay.
14          So, let me just take just a few moments to talk about
15 the -- Mr. El Bey's affidavit of truth.
16          Now, much of what you discuss has to do with the
17 question of the legality of the federal tax system, whether
18 you are subject to having to pay income tax -- federal income
19 tax.  And I don't think this is relevant for the following
20 reason:  That if you are right in your arguments, then the
21 government can't collect taxes from you.  But the charge
22 against you is not failing to pay taxes, but with seeking a
23 tax refund for income that you hadn't received and taxes you
24 hadn't paid.  That's the government's -- that's what the
25 government is seeking.

1            So, even if you don't have to pay taxes or your
2   foundation doesn't have to pay -- the trust doesn't have to
3   pay taxes, there is still the question about your obtaining
4   the tax refund when you did not pay the taxes.
5            And I think -- also, I don't really understand the
6   bearing of the material in your affidavit about the Cherokee
7   Indians, your status as a member of the Cherokees.  I don't
8   really understand how it bears on the case.
9            I don't want to argue with you about this because
10  we're not -- I'm not making any decisions or anything like
11  that.  But you want to make sure, you know, with the help of
12  your advisers and Mr. Fuentes, standby counsel -- who you are
13  free, of course, to consult -- to make sure that anything you
14  argue, you want to present to the jury, and so on, is germane
15  to the case, but also is intelligible.  That is, what the
16  connection actually is between your status within the Indian
17  tribe and this case.  So, that's something for you and your
18  advisers to think about.
19           You have raised the question, Mr. El Bey, that you
20  haven't received a charge that cites lawful U.S. statutes.
21  That material is in the indictment.  And if you don't have a
22  copy, I can give you another copy of the indictment.
23           THE DEFENDANT:  Excuse me, your Honor, they have no
24  slip laws with them and the --
25           THE COURT:  I'm sorry, I can't --

1        THE DEFENDANT:  They had no slip laws with them.  And
2   the statutes are not relevant with the slip laws to show that
3   they are the statute -- relevant statute.  So, what I want to
4   do, I had no slip laws.
5        And there's two more things I want to say.
6        This is a court of record?
7        THE COURT:  Pardon?
8        THE DEFENDANT:  This is a court of record, right?
9        THE COURT:  Is this being recorded?
10       THE DEFENDANT:  Yes.
11       THE COURT:  Yes.
12       THE DEFENDANT:  Okay.
13       So, I want the record to reflect --
14       THE COURT:  Right.
15       THE DEFENDANT:  -- on also what you were saying to me
16  about, you know -- so, you telling me there's money?  Because
17  you said I received some.  So, are you telling me that I
18  received money?
19       I'm just asking you because --
20       THE COURT:  Well, the government's charge -- I'm not
21  making --
22       THE DEFENDANT:  Okay.  Well, I'm just saying, are you
23  saying the government gave me money?
24       THE COURT:  The government --
25       THE DEFENDANT:  Well, I'm just -- that's what you --

1  you just said --
2          THE COURT:  No.  The government's charge is that you
3  received $600,000 in tax refunds from the Internal Revenue
4  Service.
5          THE DEFENDANT:  But I'm asking you 600,000, what?
6  Are you saying there's money?
7          THE COURT:  Excuse me?
8          THE DEFENDANT:  Are you telling me that they gave me
9  money?
10         THE COURT:  Yes.  No, I'm not -- I'm not --
11         THE DEFENDANT:  Well, that's what you just said now.
12         THE COURT:  No, no, no.
13         THE DEFENDANT:  This is the court record.
14         THE COURT:  Look, I'm telling you --
15         MR. EL BEY:  There's no money in the United States,
16 though --
17         THE COURT:  Wait a second.  Wait a second.
18         THE DEFENDANT:  Okay.
19         THE COURT:  I'm telling you what the government's
20 charge is.
21         THE DEFENDANT:  Okay.
22         THE COURT:  I'm not making the decision.  That's not
23 my business.
24         THE DEFENDANT:  You have to show me a contract
25 because still with the discoveries, there has been no answer

1  on -- I don't have a contract with the government. I don't
2  have a contract with Internal Revenue Service. So, there's no
3  more United States. Only thing I'm asking you is who is
4  bringing the charge and who has the authority. Show me the
5  statutes and show me the slip laws that make the statutes
6  enacted, and then I can answer or they can answer me.
7  　　　　　So, if you can't show me that, then I don't think we
8  even have a case, your Honor.
9  　　　　　THE COURT: Well, the government, the Justice
10 Department -- United States Justice Department --
11 　　　　　THE DEFENDANT: You mean the United States
12 corporation of 1871, which has been dissolved. So, what I'm
13 saying to you is unless they can show me that it is still
14 enacted and they can show me that they have jurisdiction --
15 because I don't -- I don't have any contract with that
16 corporation, and I'm not a citizen of that corporation.
17 　　　　　So, you asked me about my status as being a Choctaw
18 Indian. I'm telling you who I am. And, so, everything is
19 relevant that I filed in the case. So, they haven't answered
20 any questions. So, until they can answer me, I'm reserving
21 all my rights and then we just come forward.
22 　　　　　THE COURT: But, see, the problem is citizenship
23 doesn't really have anything to do with it. Anybody in the
24 United States -- who happens to be in the United States, or
25 foreign country for that matter, who asks the Internal Revenue

Case: 1:14-cr-00447 Document #: 116 Filed: 03/09/16 Page 9 of 17 PageID #:693

9

```
 1  Service for a tax refund and wasn't entitled to it would be --
 2          THE DEFENDANT:  I haven't asked the Internal Revenue
 3  Service anything.  I have no dealings with the Internal
 4  Revenue Service.
 5          THE COURT:  Excuse me?
 6          THE DEFENDANT:  I haven't asked the Internal Revenue
 7  Service for anything.  Internal Revenue Service hasn't given
 8  me anything.  If they can show me -- if they can pull up the
 9  contract and show me -- a contract that I have with them and
10  that they gave me something, then I'll deal with it.  But
11  Internal Revenue Service --
12          THE COURT:  The government will --
13          THE DEFENDANT:  -- is a Puerto Rican government that
14  I have not contracted with and I never will.  So, only thing
15  I'm saying is --
16          THE COURT:  No, no, the government will certainly
17  have to prove --
18          THE DEFENDANT:  Yes.
19          THE COURT:  -- that it gave you money.  There's no
20  question about it.  That's part of their proof.
21          THE DEFENDANT:  Okay.  Because I want to see that
22  because there ain't no money in the United States.  So, I want
23  to see how they're going to prove that, first of all.  And,
24  then --
25          THE COURT:  Well --
```

1    THE DEFENDANT: -- secondly, I don't have a contract
2 with the Internal Revenue Service or any agent. I have no
3 contract with anyone. I have no wet ink signature or --
4    THE COURT: Okay, but the -- it's not the contract
5 that's critical. But if you asked the Internal Revenue
6 Service for money that you are not entitled to -- see, that's
7 their charge, that you received money you were not entitled
8 to.
9    THE DEFENDANT: But, your Honor, what I'm trying to
10 say to you, there's no money. What money have I received?
11 Because I want them to tell me --
12    THE COURT: Well, that's for the government --
13    THE DEFENDANT: -- that they gave me some money and I
14 want them --
15    THE COURT: That's for the government to prove.
16    THE DEFENDANT: Okay. Because I'm not a part of the
17 corporation. We don't have a government. So, if you're
18 talking about the United States corporation of 1871, I don't
19 have a contract with them.
20    THE COURT: If you didn't receive money or if you
21 didn't try to get these refunds -- because that would be an
22 attempt -- then you're not guilty. But that's what's going to
23 be determined at the trial.
24    THE DEFENDANT: Okay. I don't have a problem with
25 that.

1          THE COURT:  Okay.
2          THE DEFENDANT:  So, from this point on, I'm going to
3  reserve all my rights and I'll just --
4          THE COURT:  Yes, well --
5          MR. EL BEY:  Because I haven't been answered.  So,
6  I'm -- you know, I'm just going to reserve my rights --
7          THE COURT:  That's fine.
8          THE DEFENDANT:  -- from this point forward.
9          THE COURT:  So, let me ask Mr. Fuentes, do you have
10 any --
11         MR. HOTALING:  Mr. Fuentes is over there.
12         MR. FUENTES:  Gabriel Fuentes --
13         THE COURT:  Oh, I'm sorry.
14         MR. HOTALING:  We look somewhat alike.
15    (Laughter.)
16         MR. FUENTES:  Gabriel Fuentes here as appointed
17 standby counsel for Mr. El Bey.
18         Thank you, Judge.
19         THE COURT:  Did you have anything you wanted to say?
20 Have you spoken to Mr. El Bey?
21         MR. FUENTES:  Yes.  But I have nothing to add at this
22 point in time.
23         THE COURT:  So, you understand, Mr. Fuentes is a very
24 experienced and competent lawyer and --
25         THE DEFENDANT:  Yes, I --

1    THE COURT:  -- I know you don't want to be
2 represented by him --
3    THE DEFENDANT:  I'm not a ward of the state, Judge.
4 And what I'm trying to tell you, if I need him, I'll call him.
5 Other than that, I don't need him.
6    THE COURT REPORTER:  You have to slow down.  Say it,
7 again.
8    THE DEFENDANT:  I'm not a ward of the state.  So, if
9 I need him, I'll call him.
10    THE COURT:  Okay.  That's fine.
11    THE DEFENDANT:  I don't need him.  I'm flesh and
12 blood, sui juris man.  So --
13    THE COURT:  That's fine.  I just wanted to --
14    THE DEFENDANT:  Okay.
15    THE COURT:  -- make sure you understand that you can
16 call him if you -- or if --
17    THE DEFENDANT:  I understand.  I understood that.
18    THE COURT:  -- your advisers may suggest that you --
19    THE DEFENDANT:  Right, right.  Well, you know, and
20 I --
21    THE COURT:  That's fine.
22    So, let's see.  Ms. Malizia, do you have anything
23 that you would like to say?
24    MS. MALIZIA:  Your Honor, the government is ready to
25 proceed to trial.

```
 1              THE COURT:  I'm sorry, I can't hear you.
 2              MS. MALIZIA:  The government is ready to proceed to
 3   trial in March.  We have nothing to add at this time.
 4              THE COURT:  Okay.
 5              MR. HOTALING:  We agree.
 6              THE COURT:  And you're --
 7              MR. HOTALING:  I'm second chair, Judge.  I filed my
 8   appearance probably about two weeks ago --
 9              THE COURT:  Okay.
10              MR. HOTALING:  -- right around the holidays.  So,
11   Ms. Malizia and I represent counsel for the government at this
12   trial and we'll proceed accordingly.
13              THE COURT:  Okay.
14              Well, I think that was it.  Let me ask my law clerks.
15              Is there anything else anybody would like to discuss
16   or shall we --
17              MR. FUENTES:  There is one scheduling issue, Judge,
18   if I may be heard.
19              THE COURT:  Yes.
20              MR. FUENTES:  As the Court knows, I had not been
21   appointed as standby counsel at the time of the last status
22   hearings when the Court set the trial date.  And I do have a
23   pending matter in San Francisco that's supposed to go to trial
24   on March 6th.  It's supposed to be a three- to four-week
25   trial.  There's a very good chance it won't go to trial, but I
```

1  wanted to not be in a position if it became some sort of issue
2  later of not having told the Court about that right away.
3          THE COURT:  Okay.  Thanks.
4          So, we'll send everybody a list of these due dates,
5  right, in case you haven't noted them down.  I'm sure you
6  have.
7          MS. MALIZIA:  I believe a lot of the dates were in
8  your last minute order, your Honor.  I would just ask, did you
9  want to set a time for the pretrial conference on February
10 9th?
11         THE COURT:  You mean a time of day?
12         MS. MALIZIA:  Yes, your Honor.
13         THE COURT:  Well, do you want to do 10:00 o'clock,
14 again?
15         Is there anything else or shall we --
16         MR. HOTALING:  Judge, I'm sorry.  On February 9th --
17 that's Monday, right?  Is there any way it could go -- I have
18 a doctor's appointment actually that morning at 9:00 a.m. in
19 Wilmette.
20         THE COURT:  Okay.
21         MR. HOTALING:  I just don't know if I'll be able to
22 be here in time for a 10:00 o'clock status.  Is there any
23 way --
24         THE COURT:  So, would you like it at a different
25 time?

```
 1              MR. HOTALING:  Either later in the afternoon or
 2   even -- we could do it later in the afternoon.  If we could
 3   perhaps say 1:00 o'clock?
 4              THE COURT:  What day of the week is --
 5              MR. HOTALING:  That's a Monday.
 6              THE COURT:  So, you'd prefer to do it at 1:00?
 7              MR. HOTALING:  If that's acceptable to the Court.
 8              THE COURT:  Well, of course, that's sort of
 9   lunchtime.  How about 2:00 o'clock?
10              MR. HOTALING:  If that's -- I think Mr. Bey is --
11              THE DEFENDANT:  See, I got my schedule -- because I
12   got a lot of things going on in my life -- set for 10:00.  We
13   had already talked about that before about we wanted to have
14   early meetings, schedule court dates.  So, it would really
15   affect me if I have to do it in the evening.
16              THE COURT:  Well, what about -- should we do it
17   February 10th?
18              MR. HOTALING:  That was going to be my suggestion.
19              THE COURT:  Is that okay?
20              THE DEFENDANT:  That's fine.
21              THE COURT:  In the morning.
22              THE DEFENDANT:  February 10th will be better.
23              THE COURT:  10:00 o'clock.
24              THE DEFENDANT:  That's fine.  10:00 o'clock.
25              MR. HOTALING:  Great.  Thank you, Judge.
```

```
1              MS. MALIZIA:  Thank you, your Honor.
2              THE COURT:  Sure.
3              Are there any other matters we should discuss?
4              MS. MALIZIA:  Nothing from the government.
5              THE DEFENDANT:  No.
6              THE COURT:  Okay.  Well, thank you very much.
7              THE LAW CLERK:  We're hearing arguments on February
8    10th.
9              MR. HOTALING:  We've run afoul.
10             MS. MALIZIA:  That may have been why it was Monday.
11             THE COURT:  How about February 11th?  Want to do
12   February 11th?
13             MS. MALIZIA:  I have a conflict at 10:00 on the 11th.
14             MR. HOTALING:  Can we do it at 11:00?
15             THE COURT:  February 12th?
16             MS. MALIZIA:  Yes.
17             THE COURT:  Wednesday, the 12th?
18             THE DEFENDANT:  That's a Thursday, right?
19             MS. MALIZIA:  Thursday, the 12th --
20             THE DEFENDANT:  That's fine.
21             MS. MALIZIA:  -- would be fine.
22             THE COURT:  Thursday, is it?
23             THE DEFENDANT:  Yeah.
24             MR. HOTALING:  Fine with me.
25             THE COURT:  Thursday, the 12th.  Okay.
```

```
 1              The 12th at 10:00 a.m.
 2              Well, I think that does it.  Great.
 3              So, have a nice January.  Keep warm.
 4              THE DEFENDANT:  Thank you very much.
 5              MR. HOTALING:  Thank you, Judge.
 6              MR. FUENTES:  Thank you, Judge.
 7              MS. MALIZIA:  Thank you, your Honor.
 8                     *    *    *    *    *
 9
10  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
11
12
    /s/ Joseph Rickhoff                      February 25, 2016
13  Official Court Reporter
```