```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4
    UNITED STATES OF AMERICA,        )  Docket No. 14 CR 447
 5                                   )
                        Plaintiff,   )
 6                                   )
              vs.                    )
 7                                   )
    HAKEEM EL BEY,                   )  Chicago, Illinois
 8                                   )  September 10, 2015
                        Defendant.   )  10:00 o'clock a.m.
 9
                TRANSCRIPT OF PROCEEDINGS - STATUS
10             BEFORE THE HONORABLE RICHARD A. POSNER

11
    APPEARANCES:
12

13  For the Plaintiff:     HON. ZACHARY T. FARDON
                           United States Attorney
14                         BY:  MR. CHRISTOPHER PAUL HOTALING
                                MS. KATHRYN E. MALIZIA
15                         219 S. Dearborn St., Suite 500
                           Chicago, Illinois  60604
16

17
    Standby Counsel
18  For the Defendant:     JENNER & BLOCK
                           BY:  MR. CHARLES B. SKLARSKY
19                         353 North Clark Street
                           Chicago, IL  60654
20                         (312) 222-9350

21

22

23
    Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
25                         Chicago, Illinois  60604
                           (312) 435-5639
```

1  (The following proceedings were had in open court:)
2          THE CLERK:  14 CR 447, USA v. Hakeem El Bey.
3          MS. MALIZIA:  Good morning, your Honor.  Kathryn
4  Malizia and Chris Hotaling on behalf of the United States.
5          MR. HOTALING:  Good morning, your Honor.
6          THE COURT:  This is our status hearing.  So what is
7  the situation?
8          MS. MALIZIA:  Your Honor, I think standby counsel may
9  want to put their appearance --
10         MR. SKLARSKY:  Good morning, your Honor.  Charles
11 Sklarsky standing in for Gabe Fuentes, who is standby counsel
12 for the defendant.
13         MS. MALIZIA:  So, your Honor, in talking to the
14 marshal --
15         THE COURT:  Mr. Sklarsky, yes.  Yes.
16         MS. MALIZIA:  In talking to the marshals, it sounds
17 like Mr. El Bey refused to be transported this morning from
18 Kankakee.
19         We can do a couple things to address this.  You can
20 issue an order that the marshals use all reasonable force to
21 compel him to appear here, at which time we can ask him
22 whether or not he wants to waive his right to be present at
23 his sentencing.
24         Alternatively, I suppose we could compel him to be
25 here for just the sentencing itself.

```
 1              THE COURT:  Excuse me.  What did you say?
 2              MS. MALIZIA:  We could compel him just to be --
 3   compel him to appear at the sentencing, the sentencing next
 4   week.  I don't think we were entirely clear what the purpose
 5   of this status was, but if you think it's important for him to
 6   be here for this status, you can issue an order compelling the
 7   marshals or having the marshals compel him to be here.
 8              THE COURT:  Yes.  Yes.  This status hearing is
 9   important, so I would like to issue -- yes, it's called a drag
10   order?
11              MS. MALIZIA:  I think that may be the common term.
12              MR. HOTALING:  Yes.
13         When would you want us to next be in front of the
14   Court?
15              THE COURT:  Well, why don't we do it at 10:00 o'clock
16   tomorrow?  Is that okay?
17              MS. MALIZIA:  That's fine for the government, your
18   Honor.
19              THE COURT:  Now, I have run -- well, I'd like to hear
20   from Mr. Sklarsky, but my patience has run out.  I want to
21   sentence him -- I want to sentence him to contempt.  He's
22   disobeyed an order.  He was supposed to show up this morning.
23   I'm going to punish him for that if I have the legal authority
24   to do so.  I don't know that much about contempt.
25              MR. HOTALING:  Well, and that's -- I don't know -- I
```

1　think you would address that question to Mr. Sklarsky, so
2　perhaps he could address it -- -
3　　　　　　HE COURT:　That would be fine.
4　　　　　　MR. HOTALING:　-- and we could have a discussion
5　about it at the follow-up.
6　　　　　　MR. SKLARSKY:　Well, I'm not sure what my standing is
7　to opine one way or the other about it.　I think a refusal of
8　a direct court order is a form of contempt.　In my experience,
9　that certainly is.　I'd like to know more about the
10　circumstances of Mr. El Bey's refusal to appear this morning
11　before I rendered any opinion about it.
12　　　　　　THE COURT:　Right.　I would certainly give him a
13　chance.
14　　　　　　MR. SKLARSKY:　Yes.　And I also would believe that he
15　should be here for whatever proceedings take place.　I know
16　that it is theoretically possible to waive one's appearance at
17　critical proceedings in the process, but given what little I
18　know about Mr. El Bey, I don't know about his ability to
19　knowingly waive and intelligently waive any of his rights.　He
20　obviously waived his right to counsel, which was, in
21　retrospect, certainly a bad decision, but -- so whether
22　escapable, really, of waiving his right to be here for the
23　status hearing or for sentencing, I don't know.
24　　　　　　THE COURT:　I have never -- sentencing somebody in
25　absentia, I would be very reluctant to sentence someone in

1 absentia.

2          Mr. Hotaling? Ms. Malizia?

3          MR. HOTALING: Well, in terms of -- I mean, on the
4 issue -- I agree with you and Mr. Sklarsky, we should have him
5 here, and though I will say there have -- there are situations
6 in which defendants have decided to absent themselves from
7 particular proceedings. I can think of a trial that I,
8 myself, participated in in which the defendant said, I don't
9 want to come to the trial. Judge Castillo offered him the
10 opportunity to have a closed-circuit TV camera in a different
11 courtroom or even a different area of the MCC. And he said, I
12 don't want to participate. I don't recognize the jurisdiction
13 of the court. It was a very similar kind of jurisdictional
14 argument. I don't want any part of it; I'm not going to sit,
15 I'm not going to watch, I'm not going to listen, I'm going to
16 absent myself.

17          And, obviously, he came in front of the Court and
18 made that position known, and the Court of Appeals said that
19 that was -- that's what he wants to do. He's got a right to
20 do it.

21          So simply -- that's why we simply raised the -- that
22 if that's really his position, he needs to come here in front
23 of the Court and tell you, I don't want to -- I'm done with
24 you, Judge. I don't want anything more to do with you.

25          And so if that's what his position he wants, I guess

1 he technically has that right.  Again, I think it's a bad
2 call, I think it's a bad decision, and hopefully by bringing
3 him in before the Court this next opportunity, tomorrow, we
4 can convince him or you can convince him to say, you know,
5 it's really in your best interest to be in front of the Court
6 and make whatever sort of mitigation arguments you want to
7 make during the course of the sentencing, and then we can
8 proceed.
9        So I think that's kind of the scenario under which
10 it's technically possible, but hopefully he won't do that.
11        THE COURT:  One reason that it's important for him to
12 be here is that I would like -- one of the purposes of this
13 status hearing, I wanted to ask him whether he -- whether it
14 was -- whether he would allow Mr. -- so will Mr. Fuentes be
15 available at the sentencing hearing?
16        MR. SKLARSKY:  My understanding is that he will be.
17 And I think -- I know he's out of town today in Kentucky with
18 a client.  He should be back this evening is my understanding.
19 And I think he would be available tomorrow as well.  I'm not
20 available tomorrow.  I have to be in Washington.
21        THE COURT:  Because what I wanted to ask him is
22 whether Mr. Fuentes -- whether he would permit Mr. Fuentes to
23 speak at the sentencing hearing.  My guess is he will say no.
24 I would hope he'd say yes and give him quasi representation.
25        So I guess -- I hope tomorrow morning -- well, even

1 if he isn't here, I'll still ask him. I'll certainly strongly
2 suggest that he allow Mr. Fuentes to speak.
3     Let me just ask. I was told he's in Kankakee?
4     MS. MALIZIA: Yes, your Honor.
5     THE COURT: Now, I know that the -- that a lot of
6 prisoners who have legal proceedings here are taken to
7 somewhat remote areas of Illinois for jailing, but I was a
8 little surprised that -- why wouldn't he be sent to the
9 Metropolitan Correctional Center or whatever it's called?
10     MS. MALIZIA: Your Honor, to be honest, it's up to
11 the Bureau of Prisons and the marshal service where they house
12 people pretrial and before their sentencings. It's entirely
13 their discretion and has a lot to do with resources and
14 specific inmate needs. But it is very, very common for
15 prisoners to be housed pretrial and post trial at Kankakee.
16     THE COURT: Yeah. It's disturbing. I encountered
17 this before. Because these people, sometimes they get them up
18 at like 4:00 a.m. to drive them to Chicago.
19     So what is Kankakee? An hour and a half?
20     MR. HOTALING: Judge, actually, I was just out at
21 Kankakee last week. I'm part of the district court's
22 detention committee, and a number of judges were actually
23 visiting the Kankakee facility last Tuesday. It takes about
24 an hour and 15 minutes. It's not as far as some of the other
25 ones.

1 THE COURT: Right. I know.

2 MR. HOTALING: And I think that they get them up
3 at 6:00 and get them here. And it's a system that -- I think
4 it works fairly well, considering. I think the overcrowding
5 issues that used to exist have gone down, and I think that the
6 marshals have a good plan in place to make sure that people
7 get here, get enough sleep to get here in time to be wide
8 awake and ready for their court appearances.

9 We do have representatives of the marshals here if
10 you'd like to talk to them.

11 THE COURT: What?

12 MR. HOTALING: We have representatives of the
13 marshals here if you would like to talk to them, but that's
14 your call.

15 THE COURT: So, yes, I would like to talk to them.

16 So when would he have to get -- wake up, be awakened
17 at Kankakee?

18 THE MARSHAL: Good morning, your Honor. We do send a
19 notice the day before to the facilities where these defendants
20 are being housed.

21 So tonight at approximately 4:30 p.m. we will send a
22 list out to Kankakee. The officers there will get the list so
23 that they can arrange the correctional officers to get these
24 guys from the old jail to the new jail ready for transport to
25 the federal courthouse the next day.

1         THE COURT: So is 10:00 o'clock --

2         THE MARSHAL: That's fine. That's a good time. We
3 will have him here by then.

4         THE COURT: Did he give any reason why --

5         THE MARSHAL: I would have to talk to the
6 correctional officers --

7         THE COURT: Pardon?

8         THE MARSHAL: I would have to talk to the
9 correctional officers who were on the transport this morning.
10 My understanding is if they refuse, they are allowed to
11 refuse, unless there is a drag order, which will prohibit them
12 from choosing.

13         THE COURT: Okay. Well, I should issue the drag
14 order.

15         THE MARSHAL: It's just a minute order, your Honor.

16         THE COURT: Pardon?

17         THE MARSHAL: Which they will send to our lockup. We
18 will send that to Kankakee, and Kankakee will ensure that
19 their appearance -- or their presence, and we will bring them
20 to court.

21         THE COURT: So is there a particular language that's
22 used in these orders?

23         THE MARSHAL: Just -- you just put that you are
24 authorized to use whatever force necessary to bring him forth
25 to the federal district.

1  MR. HOTALING: We will make sure that the marshal
2 speaks with the clerk so that we can make sure that the
3 appropriate wording works its way onto the minute order.
4  THE COURT: So I have to sign something?
5  THE MARSHAL: We have a template, your Honor.
6  THE COURT: Pardon?
7  THE MARSHAL: We have a template in our lockup, so we
8 can get that to your clerk. I'm sure they have one. Most of
9 the judges's clerks have a template for the drag order. But
10 we will get that for you so you can sign it.
11  I believe so, your Honor. I believe you would have
12 to sign it.
13  THE COURT: So I have to sign it?
14  THE MARSHAL: Yes. We will get it to you, though.
15 We will get it to you within the half hour.
16  THE COURT: Okay. That will be good. I am going to
17 leave early.
18  THE MARSHAL: Yes. We will have it to you very soon.
19  THE COURT: Pardon?
20  THE MARSHAL: We will have it to you shortly, your
21 Honor.
22  THE COURT: That will be fine. Thank you.
23  THE MARSHAL: Okay.
24  THE COURT: Is there anything further you wanted to
25 discuss, we should discuss?

1         MR. HOTALING: It's up to you, Judge.

2         MS. MALIZIA: No.

3         THE COURT: No. The important thing is that he will

4 be here tomorrow. We will have to check that we can use this

5 courtroom.

6         Well, I guess that's it.

7         MS. MALIZIA: Thank you, Judge.

8         MR. HOTALING: Thank you, Judge. See you tomorrow.

9  (Which were all the proceedings had in the above-entitled

10 cause on the day and date aforesaid.)

11  I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

12

13 Carolyn R. Cox                                Date
Official Court Reporter
14 Northern District of Illinois

15 /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR