**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|       Plaintiff, | ) |
| vs. | ) No. 14-CR-00447 |
| HAKEEM EL BEY, | ) Chicago, Illinois |
|       Defendant. | ) April 9, 2018 |
| | ) 1:30 o'clock p.m. |

**TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE**
**BEFORE THE HONORABLE JUDGE EDMOND E. CHANG**

APPEARANCES:


For the Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                            MR. CHRISTOPHER P. HOTALING
                            219 South Dearborn Street
                            Chicago, Illinois 60604
                            312-353-5300
                            christopher.hotaling@usdoj.gov


For the Defendant:          MR. HAKEEM EL BEY
                            PRO SE
                            1905 East 172nd Street
                            South Holland, Illinois 60473

Standby counsel:            JENNER & BLOCK LLP
                            MR. GABRIEL A. FUENTES
                            353 N. Clark Street
                            Chicago, Illinois 60654
                            312-222-9350
                            gfuentes@jenner.com

| | |
|---|---|
| Court Reporter: | FEDERAL OFFICIAL COURT REPORTER<br>MS. KRISTA BURGESON<br>219 South Dearborn Street<br>Chicago, Illinois 60604<br>312-435-5567<br>krista_burgeson@ilnd.uscourts.gov |

01:27:45  1       (Whereupon, the following proceedings were had in

2  open court.)

3

4       THE COURT REPORTER:  All rise.

5       This court is now in session before the Honorable

6  Judge Edmond E. Chang.

7       Case Number 14 CR 447, USA versus Hakeem El Bey.

01:36:57  8       THE COURT:  Okay.

01:36:57  9       Let's do appearances for the record, please.

01:36:57  10       MR. HOTALING:  Good afternoon, Your Honor, Chris

01:36:58  11  Hotaling for the United States.

01:37:04  12       DEFENDANT BEY:  Good afternoon, Judge.  Bey, comma,

01:37:09  13  Hakeem El, doing business as Hakeem El Bey.

01:37:15  14       MR. FUENTES:  Judge, Gabriel Fuentes, appointed

01:37:17  15  standby counsel.  With me is Philip Kovoor from Jenner & Block

01:37:25  16  who with the Court's permission may accompany and observe some

01:37:25  17  of the proceedings as we get into the trial.  If that's okay.

01:37:34  18       And of course if the Court wants Mr. Kovoor to enter

01:37:34  19  an appearance we can do that too.

01:37:35  20       THE COURT:  Is the idea that he will be just watching

01:37:39  21  or actually be interacting with Mr. Bey?

01:37:41  22       MR. FUENTES:  I think he will interact more with me

01:37:41  23  than Mr. El Bey.  It's to give Mr. Kovoor a sense of how

01:37:43  24  trials are done in the district.  He is a veteran of the New

01:37:47  25  York County DA's office, the Milwaukee County DA's office.

01:37:50  1   Lots of trial experience, but none here yet.

01:37:54  2         THE COURT:  Yes, if you are going to discuss the case

01:37:58  3   with him, you probably should file on appearance, but let me

01:38:11  4   ask Mr. Bey first.

01:38:13  5         Can Mr. Kovoor file an appearance and help

01:38:17  6   Mr. Fuentes and you out?

01:38:17  7         DEFENDANT BEY:  I don't mind.

01:38:18  8         THE COURT:  Then please go ahead and file an

01:38:42  9   appearance.

01:38:42  10        Okay.  All right.

01:38:49  11        So I had entered an order on Friday trying to take

01:38:55  12  care of the motions in limine that I could and then flag a

01:38:58  13  couple of issues.

01:38:58  14        Mr. Bey, did you get a copy of that?

01:39:02  15        DEFENDANT BEY:  No, I didn't.

01:39:03  16        THE COURT:  I -- I believe we tried to email it to

01:39:07  17  you, and then the courtroom deputy got in touch with you to

01:39:10  18  get an email address.  Do you remember that?

01:39:10  19        DEFENDANT BEY:  She called me and said she would mail

01:39:13  20  it and email me, and I got neither one.

01:39:17  21        THE COURT:  The mailing I am not surprised, but the

01:39:20  22  email should have gone out.

01:39:39  23        We will hand you a copy.  Okay.  So Mr. Bey, rather

01:39:45  24  than have you sit there and read it, I was going to go through

01:39:49  25  it anyway, we will just go step-by-step and you can follow

01:39:53   1   along in writing, okay?

01:39:55   2          DEFENDANT BEY:  Uh-huh.

01:39:56   3          THE COURT:  So the first motion that the government

01:39:58   4   had filed had to do with more trial procedure and opening

01:40:03   5   statements and closing arguments, and so for this part of the

01:40:09   6   motion, on the one hand I wanted to make clear that opening

01:40:13   7   statements are supposed to be previews of evidence, like the

01:40:17   8   facts in the case, and so you are familiar with that format

01:40:21   9   for opening statements, right?

01:40:24  10          DEFENDANT BEY:  Yes, I am.

01:40:25  11          THE COURT:  Okay.

01:40:26  12          If you do genuinely believe in good faith that

01:40:30  13   certain evidence is going to come out, including from your own

01:40:34  14   potential testimony, which is entirely up to you, then you can

01:40:38  15   mention those facts in opening.

01:40:41  16          DEFENDANT BEY:  Okay.

01:40:41  17          Judge, can I ask you a question first?

01:40:43  18          THE COURT:  Sure.

01:40:44  19          DEFENDANT BEY:  I never did get a ruling on my

01:40:46  20   jurisdictional challenge?

01:40:48  21          THE COURT:  Yes, it is actually in this order.

01:40:51  22          If you want we can skip to it, it is at the end.  It

01:41:01  23   is Page 7.

01:41:02  24          DEFENDANT BEY:  Okay.

01:41:03  25          THE COURT:  I think it is pretty well established,

01:41:05　1　Mr. Bey, that this Court does have jurisdiction, and the

01:41:09　2　arguments that you have raised have been rejected before, and

01:41:12　3　so you have now preserved this issue if you want to raise it

01:41:18　4　with the Court of Appeals upstairs, but this Court does have

01:41:21　5　jurisdiction.

01:41:22　6　　　　　　DEFENDANT BEY:  Okay.

01:41:23　7　　　　　　THE COURT:  And you can read it more closely later if

01:41:30　8　you want.

01:41:30　9　　　　　　DEFENDANT BEY:  Before we get going, I need to -- I

01:41:34　10　just need five minutes to make some statements.

01:41:37　11　　　　　　Would that be okay?

01:41:40　12　　　　　　THE COURT:  Five minutes?

01:41:41　13　　　　　　DEFENDANT BEY:  Yes.

01:41:42　14　　　　　　THE COURT:  Are they going to be a repeat of what you

01:41:44　15　have put down in writing, Mr. Bey?

01:41:48　16　　　　　　DEFENDANT BEY:  No, not a repeat, just some simple

01:41:53　17　questions, and then I want to read a little statement, and

01:41:57　18　then I will be done.

01:41:58　19　　　　　　THE COURT:  Questions I am happy to answer.

01:42:01　20　　　　　　Go ahead.

01:42:02　21　　　　　　DEFENDANT BEY:  First question is, does the Court

01:42:07　22　disclaim the trust?

01:42:08　23　　　　　　THE COURT:  The trusts that are referred to in the

01:42:11　24　indictment, that will be up to the jury to decide whether the

01:42:15　25　statements made on those forms with regard to the trust are --

01:42:18    1        DEFENDANT BEY:  I am not talking about the trust with
01:42:23    2    the jury, I'm talking about the trust that the prosecutors,
01:42:26    3    they brought me in here dealing with a trust.  Anything with a
01:42:28    4    trust is equity.
01:42:28    5        I just want to -- I never did get a straight answer
01:42:32    6    from you was this in equity court.  Is this Court of equity?
01:42:36    7        THE COURT:  This Court was created by statute --
01:42:41    8        DEFENDANT BEY:  I understand but --
01:42:42    9        THE COURT:  Just hold on.  I will get out the
01:42:45   10    decision, then you can make a comment.
01:42:48   11        DEFENDANT BEY:  Okay.
01:42:48   12        THE COURT:  Then under Title 18, United States Code
01:42:48   13    3231, the Court has jurisdiction over any charged offenses
01:42:56   14    under the Federal Criminal Code.
01:43:01   15        So go ahead.
01:43:01   16        DEFENDANT BEY:  Then I was going to, again, ask the
01:43:03   17    prosecutor, and then I was going to say, let the record show
01:43:08   18    that both the Court and the prosecutor are admitting the
01:43:11   19    trust, because you are not denying it.
01:43:16   20        And then I want to say that let the record show --
01:43:18   21        THE COURT REPORTER:  Excuse me.
01:43:19   22        Can you start that second one again?  I didn't hear
01:43:21   23    you.
01:43:21   24        THE COURT:  Yes, and slow your pace down because you
01:43:23   25    are reading.

01:43:24    1          DEFENDANT BEY:  The second one is, does the
01:43:27    2   prosecutor admit to the trust?
01:43:30    3          Then the third is let the record show that both the
01:43:33    4   Court and the prosecutor admits the trust.
01:43:36    5          The fourth one was, let the record show that the
01:43:41    6   judge by his confession and avoidance acknowledges the trust.
01:43:46    7          And the fifth one, I accept your Constitutional oath
01:43:51    8   pursuant to Article 6, Section 3, because this is about
01:43:58    9   equity.
01:43:59   10          And then the last thing I want to say is this, and
01:44:02   11   then I am done and we can start.  I just want to state that I
01:44:05   12   am the grantor, beneficiary of the trust, now established.
01:44:09   13   Trust is special matter in a court of equity.  This is not a
01:44:13   14   court of equity.  I demand to be seen in a court of equity so
01:44:17   15   my rights of a trust are acknowledged.
01:44:21   16          THE COURT:  Okay.  Thank you.
01:44:23   17          As I said, the jurisdiction of this Court is secure
01:44:27   18   regardless of whether you constitute a trust or not.
01:44:35   19          DEFENDANT BEY:  Okay.
01:44:35   20          THE COURT:  So I think we are ready to proceed.
01:44:39   21          DEFENDANT BEY:  We can proceed now.
01:44:40   22          THE COURT:  Okay.
01:44:46   23          I was discussing opening statements and the format
01:44:48   24   for opening statements, and with regard to the length, the
01:44:50   25   joint pre-trial statement says that both sides would limit

01:44:56  1   themselves to 20 minutes, so I want you to be aware that there
01:44:59  2   will be a 20-minute limit on opening statements.
01:45:03  3              DEFENDANT BEY:  (Nodding head.)
01:45:04  4              Okay.
01:45:05  5              THE COURT:  And then on closing arguments both sides
01:45:07  6   agreed in the joint pretrial statement to 45 minutes for the
01:45:13  7   limit, neither side has to take all that time, it is just a
01:45:15  8   maximum.
01:45:16  9              Okay?
01:45:17  10             DEFENDANT BEY:  (Nodding head.)
01:45:18  11             THE COURT:  Can you just say yes or no for the
01:45:21  12  record?
01:45:21  13             DEFENDANT BEY:  Yes.
01:45:21  14             THE COURT:  And then on the 45 minutes, I just want
01:45:24  15  to make sure the government understands that that is the total
01:45:27  16  allotment you have for both the opening, close, and the
01:45:30  17  rebuttal, and the only limitation I put on the split of that
01:45:34  18  time is that the rebuttal cannot exceed the time expended on
01:45:40  19  the opening close.
01:45:42  20             MR. HOTALING:  The government understands.
01:45:43  21             THE COURT:  Okay.
01:45:45  22             MR. HOTALING:  It will be the total 45 minutes, and
01:45:49  23  the opening close -- the rebuttal cannot be longer than the
01:45:53  24  opening close?
01:45:56  25             THE COURT:  Right.

01:45:56  1    MR. HOTALING:  The government understands.

01:45:57  2    THE COURT:  All right.

01:45:59  3    Then with respect to -- okay.  I don't remember if

01:46:02  4  this happened at the first trial, but in your opening

01:46:11  5  statement, Mr. Bey, and also your closing argument, you don't

01:46:15  6  have to, you may want to, it's up to you, but you do not have

01:46:17  7  to refer to yourself in the third person, that is to say --

01:46:21  8  you can just say -- let's say in closing arguments, the

01:46:24  9  evidence supported that you signed something.

01:46:36  10    You are allowed say to the jury, I signed the

01:46:38  11  document.

01:46:39  12    Do you understand?

01:46:40  13    DEFENDANT BEY:  Yes.

01:46:41  14    THE COURT:  All right.

01:46:42  15    Then the only other --

01:46:43  16    DEFENDANT BEY:  Wait a minute.  I am going to ask a

01:46:48  17  question just on what you're saying.

01:46:48  18    You say, the evidence has shown, so they have proof,

01:46:52  19  they have my signature on the document?

01:46:55  20    THE COURT:  No, I was giving you an example.

01:46:57  21    DEFENDANT BEY:  Okay.  Okay.

01:46:59  22    THE COURT:  I'm not making a finding one way or the

01:46:59  23  other.  Just wanted to give you a really easy example to

01:47:02  24  understand that I don't have a problem with you referring to

01:47:06  25  yourself and saying that "I did something" or "I took some

01:47:10 1    step" or "I spoke to someone," that is not a problem.

01:47:14 2         All right?

01:47:15 3         MR. HOTALING:  And Judge, just for clarification, as

01:47:18 4    opposed to saying, "Mr. El Bey," you saying "Mr. El Bey signed

01:47:23 5    the document," I think he is saying you can talk in the first

01:47:27 6    person.

01:47:27 7         DEFENDANT BEY:  (Laughter.)

01:47:29 8         THE COURT:  I am not sure what restriction was placed

01:47:33 9    on you the first time around.

01:47:34 10        I just want you to know you can refer to yourself in

01:47:41 11   the first person.

01:47:43 12        DEFENDANT BEY:  I can only refer to myself one kind

01:47:46 13   of way.  I don't understand what you are saying.

01:47:48 14        THE COURT:  Then that is fine.  That is perfectly

01:47:50 15   fine.

01:47:51 16        DEFENDANT BEY:  Okay.  (Laughter.)

01:47:52 17        THE COURT:  With respect to -- oh, okay.

01:47:55 18        So during questioning, when someone is testifying up

01:47:59 19   here and you are questioning them, remember that you always

01:48:03 20   have to pose questions to the witnesses, and what you can't do

01:48:14 21   is turn to the jury and make statements directly to the jury,

01:48:18 22   as if you were testifying during questioning of a witness.

01:48:21 23        Does that make sense?

01:48:22 24        DEFENDANT BEY:  Yes.

01:48:23 25        THE COURT:  You have the absolute right to testify on

01:48:25    1    your own behalf, and then of course you can take the witness

01:48:28    2    stand and you can testify right to the jury, it is just that

01:48:33    3    when you question a witness, don't turn and talk to the jury

01:48:37    4    directly.  All right?

01:48:37    5            DEFENDANT BEY:  Okay.

01:48:39    6            THE COURT:  Okay.

01:48:50    7            We have gone over the time length.  We will go over

01:48:51    8    the exhibits in a minute, Mr. Bey, but if during trial it

01:48:56    9    occurs to you that you want to try to introduce some other

01:48:59   10    exhibit that you have not yet identified, just ask for a side

01:49:03   11    bar and we will talk about it at a side bar, okay?

01:49:09   12            DEFENDANT BEY:  Well, see, what happened last trial

01:49:12   13    was I did that, and then the judge, they had rest their case,

01:49:18   14    and then the Judge opened their case up the next day when it

01:49:22   15    was my turn, and allowed them to go before me, and they used

01:49:27   16    what I brought in.

01:49:28   17            So what I am saying to you is this:

01:49:30   18            You know, I am leery on that, because just what

01:49:33   19    happened with the first case.  Every time they want to see

01:49:36   20    what I am saying, I show it to them, and then he opened the

01:49:40   21    case back up for them to use what I brought in.

01:49:44   22            So what I was going to present to them I couldn't

01:49:47   23    present, because they had already presented.

01:50:00   24            THE COURT:  Okay.  A couple things on that.

01:50:01   25            First, I do think that the trial will go more

01:50:04  1   smoothly if a new exhibit -- and this goes for the government
01:50:08  2   too, if they think of some exhibit that they haven't
01:50:12  3   identified yet, we have to talk about it first --
01:50:16  4          DEFENDANT BEY:  I want to get this clear, when they
01:50:18  5   rest their case, then their case is rested, right?
01:50:20  6          THE COURT:  The general rule is --
01:50:22  7          DEFENDANT BEY:  You know what?  I never get a
01:50:24  8   straight answer from anyone when I ask.
01:50:26  9          THE COURT:  That is because sometimes the law has a
01:50:28  10  general rule with exceptions.
01:50:30  11         So, generally yes, when the government rests, that is
01:50:34  12  the end of their case, okay, but if the defendant then
01:50:39  13  presents evidence in his case, then there is another phase of
01:50:45  14  the trial called rebuttal, where the government is allowed to
01:50:49  15  then present additional evidence to reply to the defendant's
01:50:53  16  evidence.
01:50:53  17         DEFENDANT BEY:  I am not having a problem with that,
01:50:56  18  I am talking about when they rest their case, and it is my
01:50:59  19  turn, when I want to present my evidence, I give it to the
01:51:04  20  Judge, and he decides to let them open up again, and they use
01:51:08  21  my evidence.
01:51:11  22         THE COURT:  That sounds unusual.
01:51:14  23         DEFENDANT BEY:  (INAUDIBLE.)
01:51:18  24         THE COURT:  I have never done that, so I cannot think
01:51:20  25  of a reason I would do that once the government has rested.

01:51:25  1          Okay?

01:51:25  2          DEFENDANT BEY:  Yes, sir.

01:51:26  3          THE COURT:  All right.

01:51:26  4          MR. HOTALING:  And Judge, I just need to make sure

01:51:29  5  that the record is clear.

01:51:30  6          That is not my impression nor my recollection of what

01:51:34  7  happened during the trial.  So just so the record is clear, I

01:51:38  8  do take objection to that characterization.

01:51:40  9          THE COURT:  Don't worry.  Silence is not acceptance

01:51:43  10  of that.  That is water under the bridge at this point.

01:51:48  11          DEFENDANT BEY:  Right.

01:51:48  12          THE COURT:  So the next question has to do with

01:51:50  13  forfeiture, Mr. Bey.  And of course there is the house and the

01:51:55  14  car, and if you need a couple more days to think about this

01:52:01  15  you can do that, I thought you had received the order, but

01:52:04  16  what I wanted to know was whether you want the jury to decide

01:52:11  17  the question of forfeiture, if you are convicted, or do you

01:52:11  18  want the Court to decide it?  And then the government also has

01:52:11  19  to agree if it's going to be the Court.

01:52:23  20          What happened at the first trial?

01:52:25  21          MR. HOTALING:  There was a waiver of forfeiture jury.

01:52:27  22          THE COURT:  Okay.

01:52:28  23          First, would the government waive again or not?

01:52:30  24          MR. HOTALING:  Yes.

01:52:31  25          THE COURT:  So I guess you were presented with this

01:52:34 1  issue the first time around, but if you want a couple days to

01:52:38 2  think about it you can.

01:52:41 3          Are you prepared to decide whether you want the jury

01:52:45 4  to decide forfeiture or do you want me to decide forfeiture?

01:52:49 5          DEFENDANT BEY:  No, I would like the jury to decide,

01:52:53 6  if we get that far.

01:52:54 7          THE COURT:  So if there is a conviction then you want

01:52:58 8  to go right into the jury proceedings.

01:52:58 9          So I will ask the government to prepare and just use

01:53:04 10 the pattern instructions and file them by this Wednesday the

01:53:07 11 11th.

01:53:07 12         MR. HOTALING:  Yes, Your Honor.

01:53:08 13         THE COURT:  Then Mr. Bey, do you remember the pattern

01:53:14 14 instructions, pattern criminal instructions?  There was some

01:53:16 15 discussion of it the first trial.  It is on the web site, but

01:53:18 16 there is also a pattern instructions book?

01:53:21 17         DEFENDANT BEY:  Uh-huh.

01:53:24 18         THE COURT:  So there are jury instructions that have

01:53:27 19 been already written as sort of a model, okay, like a starting

01:53:31 20 point for lawyers to use for all sorts of crimes, but also for

01:53:40 21 forfeiture.

01:53:41 22         So the government is going to propose probably the

01:53:44 23 pattern forfeiture instructions, because we need to instruct

01:53:50 24 the jury on forfeiture.

01:53:51 25         Do you understand?

01:53:52  1    DEFENDANT BEY:  But I never saw them.  I would like
01:53:55  2  to see them.
01:53:55  3    THE COURT:  No one's filed them yet.
01:53:57  4    DEFENDANT BEY:  Okay.
01:53:58  5    THE COURT:  And it didn't happen the first time,
01:54:01  6  because you waived the jury.
01:54:02  7    DEFENDANT BEY:  No, I didn't waive the jury.
01:54:06  8    THE COURT:  For the forfeiture part?
01:54:07  9    DEFENDANT BEY:  Yes.  The jury went back.  I never
01:54:11  10  waived the jury.
01:54:11  11    MR. HOTALING:  That is actually not true, Judge.
01:54:11  12    DEFENDANT BEY:  Maybe they wanted to, but --
01:54:11  13    MR. HOTALING:  Judge --
01:54:11  14    DEFENDANT BEY:  I've always asked for the jury to
01:54:18  15  decide on it.  And we had to stay another hour so the jury
01:54:21  16  could make a decision.
01:54:29  17    THE COURT:  Well, if that is accurate, then there
01:54:31  18  should have been jury instructions for forfeiture the first
01:54:34  19  time around.
01:54:34  20    Again, don't worry about what happened the first time
01:54:38  21  with respect to this issue, okay, because it is your right to
01:54:39  22  ask for a jury on forfeiture.
01:54:41  23    DEFENDANT BEY:  Yes.
01:54:42  24    THE COURT:  So we are going to have one.
01:54:44  25    The government is going to post on this Wednesday

01:54:47   1    proposed instructions.

01:54:48   2         DEFENDANT BEY:  Okay.

01:54:49   3         THE COURT:  So when those get posted, please look at

01:54:51   4    them, and -- do you have any problem telling the government

01:54:58   5    your email address?

01:54:59   6         DEFENDANT BEY:  No, they have my email address.

01:55:01   7         THE COURT:  After the hearing just confirm that you

01:55:03   8    have the most current email address for Mr. Bey, and then go

01:55:07   9    ahead and email him a copy at the same time you file it.

01:55:11  10         So we will have the jury decide forfeiture.

01:55:42  11         So this is the bottom of Page 2 of that written

01:55:44  12    order, Mr. Bey.

01:55:45  13         The government brought a motion, as you know, to bar

01:55:49  14    certain lines of argument, and so the following lines of

01:55:53  15    argument, they are irrelevant or meritless so they are barred.

01:55:57  16    And you made this argument again today.

01:56:00  17         There is no exemption you have from the jurisdiction

01:56:04  18    of the United States.  And again, you preserved that issue for

01:56:12  19    appeal.  You can't argue that to the jury.  Do you understand?

01:56:15  20         DEFENDANT BEY:  Yeah.

01:56:15  21         THE COURT:  The validity or constitutionality of the

01:56:19  22    law, whether it is the charges you face or the tax laws or

01:56:20  23    anything else, that is a legal question for me, and not for

01:56:22  24    the jury.

01:56:23  25         So don't argue that a law, whatever the law is, is

01:56:27  1    invalid or unconstitutional.

01:56:29  2         Do you understand that?

01:56:31  3         DEFENDANT BEY:  Yes, sir.

01:56:32  4         THE COURT:  Okay.

01:56:33  5         And then any other beliefs you have about the law,

01:56:46  6    and really as to whether it is valid or unconstitutional,

01:56:51  7    those are legal questions that I have to decide.

01:56:54  8         You are free to argue during closing arguments that

01:56:57  9    the law, as given to the jury, through the instructions, all

01:57:00  10   right, that you can argue about, and you can argue about how

01:57:03  11   the facts fit or don't fit those instructions.

01:57:07  12        But again, the validity or constitutionality of any

01:57:10  13   Federal law, that is for me, not the jury.

01:57:14  14        Do you understand?

01:57:17  15        DEFENDANT BEY:  Uh-huh.

01:57:18  16        THE COURT REPORTER:  Could you answer out loud,

01:57:20  17   please?

01:57:21  18        DEFENDANT BEY:  Yes.

01:57:23  19        THE COURT REPORTER:  Thank you.

01:57:32  20        THE COURT:  All right.  Let's see.

01:57:37  21        Next is -- the negligence of the IRS, or the alleged

01:57:41  22   negligence of the IRS.

01:57:45  23        So it is not a defense to these charges, Mr. Bey,

01:57:51  24   that the IRS was allegedly negligent, or made a mistake, in

01:57:59  25   sending refund checks to you.  Okay?  I am not sure you are

01:58:03 1     even going to argue that, but I do want to make sure that you

01:58:06 2     understand that that argument is off limits.

01:58:09 3          Do you understand that?

01:58:10 4          DEFENDANT BEY:  You say it is off limits?

01:58:12 5          THE COURT:  It is off limits.

01:58:14 6          DEFENDANT BEY:  Well, then how can I address my

01:58:18 7     defense if I can't say certain things that the Internal

01:58:24 8     Revenue Service do?

01:58:26 9          THE COURT:  Now, on facts --

01:58:27 10          DEFENDANT BEY:  These are going to be facts.

01:58:28 11          THE COURT:  Well, that is okay to bring out --

01:58:32 12          DEFENDANT BEY:  Okay.

01:58:32 13          THE COURT:  (Continuing) --  from the witnesses, or

01:58:35 14     from you, if you testify which is up to you --

01:58:37 15          DEFENDANT BEY:  Uh-huh.

01:58:38 16          THE COURT:  (Continuing) --  facts about what the IRS

01:58:41 17     did or did not do, as long as those facts are relevant.

01:58:45 18          DEFENDANT BEY:  Okay.

01:58:46 19          THE COURT:  So if you have a factual argument to make

01:58:49 20     about the IRS issuing those checks, for example, like issuing

01:58:54 21     the first check, then you have that first check, if you

01:58:58 22     believe that that impacted your state of mind, okay, then that

01:59:03 23     is permissible.

01:59:07 24          All right?

01:59:07 25          DEFENDANT BEY:  (Nodding head.)

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
| 01:59:08 | 1  | THE COURT:  What you cannot do is argue as a legal |
| 01:59:11 | 2  | defense to the jury, for example in closing, that, See, the |
| 01:59:15 | 3  | IRS made a mistake -- I am guessing you are going to argue |
| 01:59:23 | 4  | they didn't make a mistake, but what you can't argue is, the |
| 01:59:26 | 5  | IRS made a mistake and therefore I can't be guilty of these |
| 01:59:31 | 6  | charges. |
| 01:59:31 | 7  | Do you understand that difference? |
| 01:59:33 | 8  | DEFENDANT BEY:  Yeah. |
| 01:59:34 | 9  | THE COURT:  Okay. |
| 01:59:38 | 10 | We will see how it plays out. |
| 01:59:43 | 11 | A couple other things that are off limits are -- |
| 01:59:46 | 12 | DEFENDANT BEY:  I am going to ask you a question, |
| 01:59:48 | 13 | Judge.  Because I -- you know, I am starting to feel like |
| 01:59:53 | 14 | there is an uneven playing field again. |
| 01:59:56 | 15 | Because they are going to sit there and say I took |
| 01:59:59 | 16 | this money and bought so many houses and so many cars and -- |
| 02:00:05 | 17 | they don't know what I did with the money, they don't know how |
| 02:00:08 | 18 | much money I have, or what I had, and I think all of that is |
| 02:00:10 | 19 | irrelevant. |
| 02:00:11 | 20 | But I think to stop me from stating what I want to |
| 02:00:15 | 21 | say and prove my point and then allow them to do that is not |
| 02:00:19 | 22 | fair.  It is leaving me on an uneven playing field.  If we are |
| 02:00:26 | 23 | going to play ball, let's play it evenly. |
| 02:00:32 | 24 | And from what I am reading, they are allowed to say |
| 02:00:35 | 25 | everything, and I am limited, I am very limited, and it is not |

02:00:39  1   allowing me to present my argument properly, and theirs is

02:00:46  2   just on presumption.  There is nothing they have that is

02:00:50  3   factual.

02:00:51  4              THE COURT:  The way I need and any court needs to

02:00:53  5   decide issues of evidence is not to compare -- well, one side

02:00:59  6   proposes 10 pieces of evidence and the other side proposes 10

02:01:03  7   pieces of evidence, and I need to give them around the same

02:01:07  8   number, that is not the way I decide or any court decides

02:01:11  9   whether a piece of evidence or some argument comes in.

02:01:14  10             So even if it feels like, wow, they are really

02:01:19  11  getting every request that they want, and they are not, by the

02:01:22  12  way, but if they seem like they are winning every argument, it

02:01:27  13  is not because I am trying to have an uneven playing field

02:01:33  14  where you are being prejudiced, I am just evaluating one by

02:01:37  15  one what their requests are, and then one by one, what your

02:01:41  16  requests are.

02:01:43  17             And so I have to let the chips fall where they may,

02:01:47  18  even if it seems to you like, hey, I am batting 2 for 10 and

02:01:54  19  they are getting 10 for 10, and I can't say on Mr. Bey's 11th

02:01:59  20  request, I am going to give it to him because I've only given

02:02:07  21  him two.  Do you understand?  I do have to go one by one.

02:02:07  22             Does that make sense to you?

02:02:08  23             DEFENDANT BEY:  Yeah, I understand that.  But what I

02:02:09  24  am saying is, everything that they are presenting to you is

02:02:11  25  not factual, they're only presumptions.  And there's testimony

about somebody who doesn't have firsthand knowledge, and I have firsthand knowledge and you denied me my firsthand knowledge.

THE COURT: Yeah, and it depends on what it is. So you talked about the house and the car. Those are really good examples, because as I put in this order, which you will have a chance to read fully after the hearing, you are free to argue that the government's evidence does not show that the money you spent on the car and on the house came from the refund checks, whether it is through testimony of yourself or someone else, you can elicit facts, and then argue to the jury, that that money, to make those purchases, did not come from the refunds. You are absolutely allowed to do that.

They are allowed to try to prove that the monies for those purchases came from the refunds.

So that is just a classic example of the parties having different versions of the facts, but you will get to argue that.

Okay?

DEFENDANT BEY: Okay.

THE COURT: Okay.

A couple other things that are off limits, and really, these are the kinds of things that are off limits not just to you, Mr. Bey. It is not personal to you; this is in every criminal case. Any arguments about the motivation for

02:03:44  1  investigating or prosecuting the case, or any allegations

02:03:48  2  about government misconduct, those are off limits.  All right?

02:03:52  3  Do you understand?

02:03:53  4          DEFENDANT BEY:  Uh-huh.

02:03:55  5          Any evidence of government misconduct?

02:04:02  6          THE COURT:  Well, I could probably be clearer on

02:04:05  7  that.

02:04:05  8          If you believe that -- let me divide it up.

02:04:18  9          If you believe that prosecutors have engaged in

02:04:21  10  misconduct, that is the kind of argument that I have to

02:04:26  11  decide, right?  Outside the presence of the jury.

02:04:29  12          So you understand that piece, the prosecutors.  Do

02:04:32  13  you get that part?

02:04:33  14          DEFENDANT BEY:  Yeah, yeah.

02:04:36  15          THE COURT:  And if you believe agents have engaged in

02:04:41  16  misconduct and they are testifying, all right, and you believe

02:04:45  17  that they are not telling the truth, all right, you get to

02:04:49  18  question them about that, or you get to challenge them about

02:04:55  19  that.

02:04:55  20          If they testify about a conversation they had with

02:04:58  21  you, and you think they tricked you into making some

02:05:02  22  statement, or they are not being truthful about what they said

02:05:05  23  you said, you can question them about that, you can argue

02:05:08  24  about that.

02:05:10  25          So I am not trying to prevent you from arguing that

02:05:16  1   the witnesses have their facts wrong or that their conduct
02:05:21  2   toward you was what caused you to say things that they are now
02:05:32  3   introducing into evidence, that you can still pursue.
02:05:36  4          Do you understand?
02:05:39  5          DEFENDANT BEY:  Uh-huh.
02:05:40  6          THE COURT:  Can you say yes or no out loud, please.
02:05:43  7          DEFENDANT BEY:  I --
02:05:44  8          Yes.
02:05:45  9          THE COURT:  Okay.
02:05:45  10         DEFENDANT BEY:  I am understanding what you are
02:05:47  11  saying, yes.
02:05:49  12         THE COURT:  I think we use misconduct as a shorthand
02:05:53  13  before these criminal trials really in cases where both sides
02:05:56  14  have lawyers, so I do realize that that is probably too broad
02:06:01  15  of a word to use with you.
02:06:05  16         All right?
02:06:05  17         DEFENDANT BEY:  Yes.
02:06:07  18         Is this case sealed, Judge?
02:06:09  19         THE COURT:  No.
02:06:10  20         DEFENDANT BEY:  It is not?  Okay.
02:06:11  21         THE COURT:  No, it is a public --
02:06:14  22         DEFENDANT BEY:  Can I request that this case be
02:06:16  23  sealed?
02:06:18  24         THE COURT:  Unfortunately it is -- the public itself
02:06:23  25  has a right to view the proceedings.

02:06:27    1         If you are concerned about certain things like your

02:06:30    2  Social Security number or your address --

02:06:32    3         DEFENDANT BEY:  I don't care about that.

02:06:35    4         THE COURT:  Okay.

02:06:35    5         Other than that, there is really no basis to seal any

02:06:41    6  part of the proceedings.

02:06:43    7         Okay?

02:06:43    8         DEFENDANT BEY:  Okay, okay.

02:06:45    9         THE COURT:  The next part, and this is important,

02:06:47  10  because you have been through a trial and already served a

02:06:50  11  prison sentence.

02:06:52  12         You can't, nor can the government, mention any of the

02:06:55  13  penalties you might face if you are convicted.  Do you

02:07:00  14  understand that?

02:07:00  15         DEFENDANT BEY:  Uh-huh.

02:07:01  16         THE COURT:  Please, out loud.

02:07:03  17         Yes or no?

02:07:04  18         DEFENDANT BEY:  No, I wouldn't mention it.

02:07:07  19         I don't know.  I couldn't mention it.

02:07:14  20         THE COURT:  The same goes for the fact that you have

02:07:17  21  already served a term of imprisonment, okay?  You cannot

02:07:21  22  mention that to the jury, do you understand?

02:07:23  23         DEFENDANT BEY:  I wouldn't mention that, yes.

02:07:27  24         THE COURT:  Obviously it is not necessarily a good

02:07:30  25  thing for you.

02:07:31  1      The other thing is you just said, you are not even

02:07:35  2  sure of the penalties that you face.

02:07:38  3      I think that -- well, I am quite sure that at various

02:07:42  4  points in the proceedings you have been told, certainly at the

02:07:47  5  first time you appeared in this case, the initial appearance,

02:07:50  6  and at the sentencing phase you should have also been alerted

02:07:55  7  as to what the maximum penalties are.

02:07:58  8      Are you still confused about what the maximum

02:08:00  9  penalties are?

02:08:05  10      DEFENDANT BEY:  I think I remember.  I don't remember

02:08:08  11  what they were.

02:08:09  12      THE COURT:  All right.

02:08:09  13      MR. HOTALING:  Judge, I think we did it our first

02:08:12  14  appearance before this Court.

02:08:13  15      THE COURT:  Right, because I wanted to make sure that

02:08:19  16  you understood at least the possibility that you were still

02:08:24  17  facing more time, imprisonment time, and I thought we had gone

02:08:31  18  through the penalties again, the maximum penalties.

02:08:38  19      If you don't remember doing that, then we ought to do

02:08:48  20  that right now.

02:08:49  21      DEFENDANT BEY:  Okay.

02:08:54  22      Do you have that --

02:08:56  23      MR. HOTALING:  I have the indictment, Judge.

02:08:58  24      THE COURT:  But do you have like your initial

02:09:00  25  appearance jacket or anything like that?

02:09:02  1      MR. HOTALING:  No, but I know, Judge, Counts One and

02:09:07  2  Two are violations of 18 USC 1341, which is mail fraud.  Just

02:09:13  3  off the top of my head, I believe that is a 20-year statutory

02:09:16  4  term of imprisonment, maximum fine of $250,000, or twice the

02:09:22  5  gain associated with the offense, and a term of supervised

02:09:26  6  release of not more than three years.

02:09:29  7      And then there are Counts 3 through 8, and they are

02:09:37  8  each violations of Title 18 U.S. Code Section 287, I -- I --

02:09:44  9  that one I am not -- I don't have at the top of my head.

02:09:48  10      THE COURT:  I will look it up.

02:09:50  11      So first, Mr. Bey, do you understand that on the

02:09:54  12  first two counts the maximum penalties are, because there is

02:09:57  13  no bank involved, so it is a 20-year maximum on each count,

02:10:02  14  okay?  Those are the mail fraud counts.  A maximum fine of the

02:10:07  15  greater of three numbers, $250,000, twice the gain that the

02:10:17  16  defendant allegedly obtained, or twice the loss that the

02:10:21  17  defendant allegedly inflicted, and then a term of supervised

02:10:25  18  release of no more than three years.

02:10:26  19      In theory they can be put on top of each other called

02:10:31  20  consecutive.

02:10:31  21      So do you understand what the maximum penalties are,

02:10:37  22  Counts One and Two, the mail fraud?

02:10:37  23      DEFENDANT BEY:  I hear you, yes.

02:10:42  24      THE COURT:  Okay.

02:10:44  25      Then the 287 false claims are -- and I think there

02:10:46  1   are six of them, Counts 3 through 8, are maximum imprisonment

02:10:51  2   terms of five years, and then the same thing with the fines,

02:10:55  3   okay, $250,000, or twice the gross gain, or the gross loss,

02:11:01  4   and then supervised release of not more than three years.

02:11:05  5        Again, that is on each count, so in theory they can

02:11:08  6   be stacked on top of each other.

02:11:10  7        So do you understand what the maximum penalties are

02:11:13  8   on the 287 counts as well?

02:11:15  9        DEFENDANT BEY:  Yes, I heard you.  I understand,

02:11:17  10  uh-huh, yes.

02:11:18  11       THE COURT:  All right.

02:11:23  12       So now we are at the bottom of Page 4, Mr. Bey, back

02:11:28  13  to the order, and top of Page 5.

02:11:33  14       So if you have some complaint about discovery, and

02:11:36  15  the same goes for the government if they think they didn't get

02:11:40  16  something from you, that issue has to be raised with me

02:11:44  17  outside the presence of the jury.

02:11:45  18       Do you understand that?

02:11:47  19       DEFENDANT BEY:  Yes.

02:11:52  20       THE COURT:  And then lastly on this motion, there is

02:12:00  21  the burden of proof of beyond a reasonable doubt, and as you

02:12:04  22  might recall from the first -- although I guess I am not sure

02:12:09  23  exactly what happened during the instructions, but generally,

02:12:11  24  we don't tell the jury some detailed definition of reasonable

02:12:15  25  doubt, like, what does that mean, and we leave it up to them

02:12:19  1   to decide.  All right?

02:12:20  2        So do you understand, don't try to define for the

02:12:24  3   jury what exactly does reasonable doubt mean.

02:12:27  4        Does that make sense?

02:12:28  5        DEFENDANT BEY:  Yes, it makes sense.

02:12:29  6        THE COURT:  You absolutely are entitled to argue that

02:12:33  7   that is the government's burden of proof, and you are

02:12:38  8   absolutely entitled to argue that their proof doesn't meet the

02:12:43  9   burden of reasonable doubt.  But don't try to explain what

02:12:46  10  that definition is.

02:12:48  11       All right?

02:12:48  12       DEFENDANT BEY:  Okay, yes.

02:12:50  13       THE COURT:  All right.

02:12:51  14       We talked about Page 5, the bottom half, and that is

02:12:55  15  the monies that the government says were from the refunds, and

02:12:59  16  so they are going to be allowed to introduce that evidence,

02:13:02  17  because it is relatively close in time, and you are allowed to

02:13:06  18  respond to that evidence and argue that it doesn't show what

02:13:09  19  the government says it does.

02:13:11  20       All right?

02:13:27  21       DEFENDANT BEY:

02:13:37  22        (Perusing document.)

02:13:39  23       DEFENDANT BEY:  There is a lot of wording in here

02:13:41  24  that I don't like, but that's -- you know.

02:13:44  25       THE COURT:  I --

02:13:44   1          DEFENDANT BEY:  I ain't no attorney, so I just --
02:13:46   2    what else am I going to do.  I can't do nothing but --
02:13:50   3          THE COURT:  You are certainly welcome to ask me
02:13:52   4    questions about it because I know you are just reading it now.
02:14:00   5          DEFENDANT BEY:  Yes.
02:14:00   6          (Perusing document.)
02:14:02   7          DEFENDANT BEY:  I see there is expensive trips,
02:14:06   8    gambling -- they don't know anything that I did.  That is
02:14:09   9    ludicrous for them to even put that in there.
02:14:17   10         That is crazy.
02:14:18   11         MR. HOTALING:  What?
02:14:19   12         THE COURT:  That was from another case.  I was
02:14:21   13    quoting from another case.
02:14:23   14         The government is not introducing --
02:14:26   15         MR. HOTALING:  Not of gambling.
02:14:28   16         THE COURT:  Evidence of gambling or expensive trips,
02:14:31   17    Mr. Bey, that was a quotation from another case, just for the
02:14:34   18    same idea that the government does get to show that a
02:14:40   19    defendant has a motive to commit a financial crime, meaning
02:14:44   20    that they buy things with the money, and that is what I am
02:14:47   21    allowing them to argue.  And as I said, you can respond back
02:14:51   22    to that either with facts or you can just argue that the facts
02:14:55   23    don't show that the monies came from the refunds.
02:14:59   24         All right?
02:14:59   25         DEFENDANT BEY:  Okay.

THE COURT:  Okay.

Page 6.

There are certain government exhibits that have to do with your bank records and records of things like purchases of the car, or cars, plural.  And there is a rule of evidence that allows the government to obtain an affidavit, all right, an under oath statement, from the records custodian, that is a fancy way of saying the people who keep the records, saying that, here, the attached records are from whatever financial account it is, we keep that information in the ordinary course of doing our business, and the information on there is made around the time of the information's creation.

So they are allowed to use this sworn statement to introduce that evidence as opposed to calling in that person who would then say, yeah, these are the records of our company.

So that is Rule 902, subparagraph 11, so 902.11.

I think you had objected, it wasn't very explained, but you had objected to the government's use of those affidavits from the record keepers.  And it is my choice, all right, to decide whether there are some circumstances that would make me suspicious enough that I would require the government to bring in the record keeper, have them sit there, and then you could ask them questions.

So is there anything about the records themselves

02:16:52  1    that make you doubt that they are authentic, like they are

02:16:55  2    genuine records?

02:16:59  3          DEFENDANT BEY:  Um --

02:17:00  4          THE COURT:  Or was your complaint really that these

02:17:03  5    are not purchases made by monies from the refunds?

02:17:09  6          DEFENDANT BEY:  Well, what I am saying is, you're

02:17:12  7    saying authenticated.  He got his records from the bank, you

02:17:16  8    said, the bank keepers who have records of the checks, that

02:17:21  9    you are saying that I cashed, that I sent them in and cashed

02:17:25  10   in order to acquire certain things.

02:17:28  11         Is that what you are saying?

02:17:29  12         THE COURT:  We have to split that up into a couple of

02:17:32  13   things.

02:17:32  14         Because there are the bank records, that is the first

02:17:35  15   part of what you said.

02:17:36  16         DEFENDANT BEY:  Yes, okay.

02:17:37  17         THE COURT:  To purchase certain things.

02:17:39  18         And then there are other records for that as well

02:17:43  19   that don't necessarily come from the bank, they come from like

02:17:46  20   car dealerships.

02:17:48  21         DEFENDANT BEY:  Okay.

02:17:48  22         THE COURT:  And my question to you is, do you have

02:17:51  23   some concern that those aren't accurate records from either

02:17:57  24   the banks or the car dealerships?

02:18:00  25         DEFENDANT BEY:  Well, I don't have concerns with

02:18:02 1 that.

02:18:02 2          As I was stating before, I have concerns with the

02:18:05 3 monies.  I worked a job.  I was putting $5,000 in there every

02:18:12 4 month.  So they don't know where the money come from.

02:18:14 5          THE COURT:  And that is the kind of evidence you can

02:18:18 6 certainly bring out, either through witnesses, or if you

02:18:20 7 testify, which is up to you.  But if you can't explain why

02:18:30 8 there might be problems about the genuineness, or the

02:18:34 9 accuracy, of the records that the government proposes to

02:18:37 10 introduce with these affidavits, then I am not going to

02:18:40 11 require the record keepers to come in.

02:18:46 12          So last chance, is there anything about the

02:18:49 13 genuineness or the accuracy of those records that concerns

02:18:53 14 you?

02:18:53 15          DEFENDANT BEY:  Yeah, because -- I would like to

02:18:56 16 question them.  I would personally like to question them since

02:19:01 17 they had an opportunity to question them, I would like to see

02:19:04 18 how genuine they are and what evidence do they have, and is it

02:19:10 19 legitimate.  I would like to find that out for myself.

02:19:14 20          THE COURT:  Okay.

02:19:15 21          I am going to exercise my discretion to disallow

02:19:18 22 that.

02:19:19 23          DEFENDANT BEY:  Okay.  (Laughter.)

02:19:25 24          THE COURT:  The Supreme Court has decided that

02:19:28 25 certain records are not what we call testimonial, that is the

02:19:36  1    key word, because they weren't -- they weren't generated for

02:19:42  2    law enforcement or for prosecution, they were just generated

02:19:48  3    because it is in the ordinary course of the business.

02:19:51  4            DEFENDANT BEY:  Yeah, but you said -- generated for

02:19:54  5    them, but you allow them to use it, but you're not allowing me

02:19:57  6    to get the same results, to question them also, but you are

02:20:02  7    allowing them to question them.

02:20:03  8            You said they weren't generated for that, but they

02:20:07  9    are allowed to question the guys, females, or whoever, to find

02:20:13  10   out -- to get the information that they got, but I am not

02:20:16  11   allowed to do the same thing.

02:20:18  12           THE COURT:  Well, here is --

02:20:19  13           DEFENDANT BEY:  That is why I say it is not an even

02:20:22  14   playing field.

02:20:23  15           THE COURT:  The rule does not require the record

02:20:25  16   keeper to come in if there is not really a concern about the

02:20:30  17   genuineness or the accuracy.  So I am not going to require the

02:20:35  18   government to bring them in.

02:20:36  19           Having said that, you do have the power of what we

02:20:40  20   call subpoena, so you can serve a subpoena on the record

02:20:45  21   keepers, and you can bring them in, okay, and you just have to

02:20:50  22   make a decision, and you also have to get them served, as soon

02:20:54  23   as possible, if you are going to do that.

02:20:57  24           DEFENDANT BEY:  Right.

02:20:57  25           THE COURT:  Okay?

| | | |
|---|---|---|
| 02:20:58 | 1 | DEFENDANT BEY: Okay. |
| 02:21:01 | 2 | THE COURT: All right. |
| 02:21:02 | 3 | Now your exhibits, Mr. Bey, let's move on to your |
| 02:21:30 | 4 | exhibits. |
| 02:21:33 | 5 | Do you have a copy with you? |
| 02:21:34 | 6 | DEFENDANT BEY: No, I don't. |
| 02:21:36 | 7 | MR. HOTALING: We can share, I have them in a binder |
| 02:21:38 | 8 | and I -- |
| 02:21:39 | 9 | THE COURT: You know what I can do? I will put them |
| 02:21:41 | 10 | on the screen. |
| 02:21:42 | 11 | Okay, Mr. Bey? I can put them on the screen. |
| 02:21:45 | 12 | DEFENDANT BEY: Okay. |
| 02:21:46 | 13 | THE COURT: Hold on one second, please. |
| 02:22:11 | 14 | DEFENDANT BEY: All right. |
| 02:22:13 | 15 | THE COURT: Do you see this on the screen in front of |
| 02:22:14 | 16 | you? |
| 02:22:16 | 17 | DEFENDANT BEY: Yes. |
| 02:22:18 | 18 | THE COURT: You listed 7 attachments as what you |
| 02:22:20 | 19 | wanted to introduce. |
| 02:22:21 | 20 | So you see where I highlighted there? For the |
| 02:22:24 | 21 | record, I am reading from docket entry 160 which was the set |
| 02:22:29 | 22 | of exhibits the defendant proposed. This is the PDF page 3, |
| 02:22:34 | 23 | and it is entitled, lawful notice. |
| 02:22:40 | 24 | So is the idea, Mr. Bey, that the documents that you |
| 02:22:43 | 25 | attached would show, as the first sentence under the title |

02:22:47  1    says, that you are not a United States citizen?

02:22:50  2            DEFENDANT BEY:  Yes, I am not a U.S. citizen.

02:22:58  3            THE COURT:  That is the purpose of these exhibits

02:23:00  4    then?

02:23:00  5            DEFENDANT BEY:  Yes, to let you know I am not a U.S.

02:23:05  6    citizen.  I am not a ward of the State.  I am not a Fourteenth

02:23:10  7    Amendment citizen.  I am not an artificial person.  I am not

02:23:13  8    an entity, I am a flesh and blood man.

02:23:18  9            So what I am showing you is that, you know -- that is

02:23:23  10   why you don't have jurisdiction, because you are not dealing

02:23:26  11   with a fictional or a corporation or a thing, you are dealing

02:23:32  12   with a flesh and blood man.

02:23:34  13           So what I am showing you is that -- this is what -- I

02:23:39  14   sent you the certification from the Internal Revenue Service

02:23:42  15   stating that I am not a U.S. citizen.

02:23:50  16           THE COURT:  That is what I figured, because obviously

02:23:52  17   it says that -- you were trying to show that you are not a

02:23:56  18   United States citizen.

02:23:57  19           So this more than goes to the jurisdictional decision

02:24:03  20   you have been making, which is a question of law for the Court

02:24:05  21   to decide.

02:24:06  22           DEFENDANT BEY:  Not just that, the fact that this

02:24:09  23   equity, if this is a court of equity, then I ask for

02:24:17  24   subrogation, and to certify the subrogation and to pay the

02:24:21  25   debt, when I actually wanted an equity court, you never did

02:24:28  1    answer me, you just went around me.

02:24:29  2        And so I wanted to let the record reflect that when

02:24:37  3    I asked if it was an equity court, I did not get an answer,

02:24:41  4    and if we are in equity, then I am the beneficiary of this

02:24:46  5    trust.

02:24:47  6        I asked you was this -- did you acknowledge the

02:24:52  7    trust.  That is one of the reasons why I asked you, did you

02:24:55  8    disclaim the trust.

02:24:57  9        THE COURT:  And again, whether -- there is no -- I am

02:25:01  10   afraid there is no legal effect, and here no factual one

02:25:08  11   either, to whether you are a trust, and --

02:25:12  12       DEFENDANT BEY:  Not whether I am a trust, I know I am

02:25:14  13   not a trust, it is dealing with trust.

02:25:16  14       We were brought in here, this case was brought in,

02:25:19  15   because of a trust, the monies that the Internal Revenue

02:25:25  16   Service sent to me was from a trust, so it has to be equity,

02:25:29  17   it has to be an equity court.

02:25:31  18       This is not an equity jurisdiction.

02:25:36  19       THE COURT:  There is no division in the Federal

02:25:38  20   Courts between a court of equity or otherwise, so we do have

02:25:44  21   jurisdiction under the law that I cited earlier.

02:25:45  22       DEFENDANT BEY:  Well, equity is over law.

02:25:48  23       THE COURT:  So, I think, Mr. Bey, because of the

02:25:50  24   purpose of these exhibits, they -- they are not for the jury

02:25:55  25   to consider.  So they are part of the record, you have made

02:25:59  1  them part of the record, so if you have some other legal

02:26:03  2  argument you want to make based on them, the Court of Appeals

02:26:07  3  will have a chance to view them, but these are not exhibits

02:26:10  4  that can go before the jury.

02:26:11  5      DEFENDANT BEY:  Okay.

02:26:13  6      THE COURT:  Okay.

02:26:14  7      Then the government.

02:26:21  8      DEFENDANT BEY:  I don't accept that, but there is

02:26:23  9  nothing I can do about it.  I am not accepting anything you

02:26:26  10  are saying, but I have to.  I mean, it is going to proceed

02:26:30  11  anyway without my permission or my consent.  But there is

02:26:33  12  nothing I can do about it.  So.

02:26:34  13      THE COURT:  It is just like when the government loses

02:26:36  14  and I overrule one of their objections, then they have to take

02:26:41  15  it up with the Court of Appeals if it is a problem.

02:26:45  16      DEFENDANT BEY:  Okay.

02:26:46  17      THE COURT:  So the one exhibit I think you did have

02:26:49  18  an objection to that the government had proposed was

02:26:51  19  Government Exhibit 52, and this was that timeline, so -- hold

02:26:56  20  on a second.

02:27:03  21      Hold on.  I can pull that up.

02:27:10  22      DEFENDANT BEY:  Yeah, because I remember, you gave

02:27:13  23  them to -- to the 4th to file the documents, I never received

02:27:19  24  anything on the 4th, but I saw they did file something on the

02:27:22  25  6th, but you gave them the 4th last time we was here.

02:27:26   1          THE COURT:  What are you referring to, Mr. Bey?

02:27:29   2          DEFENDANT BEY:  To answer the challenge to the

02:27:32   3   jurisdiction and the --

02:27:39   4          THE COURT:  They did respond on April 4.  They did

02:27:42   5   file on April 4, Mr. Bey.

02:27:45   6          DEFENDANT BEY:  Because when I looked at it in the

02:27:47   7   docket, it says the 6th.

02:27:49   8          THE COURT:  That was my order on the 6th.

02:27:52   9          DEFENDANT BEY:  Oh, okay.

02:27:53  10          MR. HOTALING:  It's got the date.

02:27:55  11          DEFENDANT BEY:  I never received anything, that is

02:27:58  12   why -- I never received anything from them.

02:28:00  13          THE COURT:  I think it might help if you --

02:28:02  14          MR. HOTALING:  And Judge, I heard a lot of this out

02:28:05  15   in the hallway, apparently -- we have made an effort to send

02:28:11  16   any number of different documents through the mail to Mr. El

02:28:15  17   Bey and he said he hasn't received them.

02:28:17  18          DEFENDANT BEY:  I haven't received them.

02:28:18  19          MR. HOTALING:  I don't know why that's the case.

02:28:20  20          I can certainly represent to the Court as an officer

02:28:22  21   of the court that on the required dates we put into the mail

02:28:24  22   the required materials.

02:28:26  23          I gave Mr. El Bey today copies of additional stuff

02:28:29  24   that we tendered, that we mailed to him, I think on April 4th.

02:28:32  25   And again, he indicates that he hasn't received it.  We

02:28:35　1　provided another copy of that material in person.  I handed it

02:28:39　2　to him today.

02:28:40　3　　　　THE COURT:  Mr. Bey, can you just look at the -- I

02:28:43　4　don't want to state it on the record because this is a

02:28:49　5　criminal case, but is this your home address here

02:28:53　6　(indicating)?

02:28:53　7　　　　DEFENDANT BEY:  It is.

02:28:55　8　　　　THE COURT:  We might as well put this on.  What is

02:28:59　9　the email address to reach you at?

02:29:01　10　　　　DEFENDANT BEY:  It is b-e-y-h-a-k-e-e-m 1959 at Gmail

02:29:13　11　dot com.

02:29:13　12　　　　MR. HOTALING:  Judge, I was grabbing my paper.

02:29:17　13　　　　THE COURT:  I will repeat it.

02:29:20　14　　　　It was b-e-y-h-a-k-e-e-m.

02:29:22　15　　　　DEFENDANT BEY:  Yes.

02:29:23　16　　　　THE COURT:  1959.

02:29:26　17　　　　DEFENDANT BEY:  Yes.

02:29:27　18　　　　THE COURT:  At Gmail dot com.

02:29:31　19　　　　DEFENDANT BEY:  Yes.

02:29:31　20　　　　THE COURT:  So we will just make sure that we send

02:29:34　21　items that way too.

02:29:36　22　　　　DEFENDANT BEY:  And also, I was trying to look at the

02:29:39　23　docket, we couldn't get into the docket, by my computer

02:29:43　24　either.

02:29:44　25　　　　MR. HOTALING:  Your home computer?

02:29:45   1    DEFENDANT BEY:  Yes.

02:29:49   2    I thought everything had switched over to where you

02:29:52   3    can get in them now, but I still couldn't get in them.

02:29:55   4    THE COURT:  Mr. Bey, do you have a -- there is a user

02:30:01   5    ID that you have to obtain and register for and -- you haven't

02:30:05   6    done any of that?

02:30:06   7    DEFENDANT BEY:  No, no.

02:30:07   8    THE COURT:  So you are not going to be able to access

02:30:10   9    the docket from outside of the 20th floor.

02:30:14   10   DEFENDANT BEY:  Oh, oh.

02:30:15   11   THE COURT:  You can go to the 20th floor, there are

02:30:20   12   terminals and you can --

02:30:21   13   DEFENDANT BEY:  I went there early and looked it up.

02:30:24   14   But we can't get it at home?

02:30:27   15   THE COURT:  You have to go through training and some

02:30:29   16   other steps.

02:30:29   17   DEFENDANT BEY:  Oh, oh, oh, okay.

02:30:31   18   THE COURT:  After this hearing you can go down to the

02:30:33   19   20th floor and ask them, but I think, like I said, you have to

02:30:37   20   go through training, and fill out some other forms.  I am not

02:30:41   21   sure it would all happen before the trial.

02:30:44   22   So, as I said, we will email you anything we enter,

02:30:49   23   the government is directed to email you as well at that

02:30:53   24   address, and if you do have questions, I guess I will -- you

02:30:59   25   could also ask, you know, Mr. Fuentes, if there is some filing

02:31:04  1    that you expected and you haven't got, maybe he could check

02:31:07  2    the docket for you.

02:31:08  3             All right?

02:31:09  4             DEFENDANT BEY:  Okay.

02:31:10  5             THE COURT:  Okay.

02:31:12  6             But getting back to the exhibits, do you remember

02:31:15  7    getting a set of the government's exhibits, and this was a few

02:31:20  8    weeks ago now, and you were supposed to tell them whether you

02:31:23  9    objected to exhibits or not?

02:31:26  10            Does this sound familiar?

02:31:27  11            DEFENDANT BEY:  Um, yes, we met at Mr. Fuentes'

02:31:32  12   office.

02:31:32  13            THE COURT:  Okay.

02:31:32  14            DEFENDANT BEY:  Yes, sir.

02:31:33  15            THE COURT:  I am putting on the screen --

02:31:36  16            Do you see it?

02:31:37  17            DEFENDANT BEY:  Yes.

02:31:38  18            THE COURT:  That is Government Exhibit 52, and this

02:31:41  19   is the only exhibit that there was a pre-trial objection made

02:31:45  20   to, so it is this timeline.

02:31:49  21            Does this look familiar now?

02:31:55  22            DEFENDANT BEY:  What does --

02:31:58  23            (Discussion held off the record between the attorney

02:31:58  24   and client.)

02:32:02  25            DEFENDANT BEY:  Yes.

02:32:04  1        THE COURT:  Let me make sure with the government,
02:32:09  2  this is just going to be a demonstrative exhibit.
02:32:11  3        MR. HOTALING:  It is a 1006 summary exhibit, Judge.
02:32:17  4        THE COURT:  Is it a 1006 summary, though?
02:32:17  5        MR. HOTALING:  There is underlying records and it
02:32:23  6  provides -- obviously the exhibits are voluminous.
02:32:28  7        THE COURT:  Are they?
02:32:28  8        MR. HOTALING:  Well, this is them all printed out.
02:32:30  9        THE COURT:  But each one of those rectangles, each
02:32:34  10  one of the events, you could probably boil down to, you know,
02:32:38  11  a couple pages within the group -- within some group exhibit.
02:32:47  12        MR. HOTALING:  So, Judge, our position that it is a
02:32:51  13  1006, that it accurately represents the voluminous records, if
02:32:55  14  the Court was inclined to say that it is not a 1006, we would
02:33:00  15  certainly intend to use it as demonstrative, certainly during
02:33:03  16  closing argument, that would be our request.
02:33:05  17        I think it is the government's position that it does
02:33:09  18  fall within the scope of the rule and would ask for a ruling
02:33:11  19  accordingly, but we will proceed with however the Court rules.
02:33:17  20        THE COURT:  It is more demonstrative than it is --
02:33:26  21        I mean, I can see how -- yes, I do think this is more
02:33:45  22  demonstrative than 1006.
02:33:49  23        Most of these events you could boil down to one or
02:33:53  24  two pages out of the actual underlying exhibit, and it is --
02:33:58  25  yes, it is much more in the nature of an argumentative

02:34:03   1    timeline than it is a 1006 summary.

02:34:09   2          So here is what I am going to do with this exhibit,

02:34:12   3    Mr. Bey, and you can react to this.

02:34:15   4          I am not going to allow the government to introduce

02:34:20   5    this into evidence for the jury to take back with it for jury

02:34:24   6    deliberations.

02:34:26   7          What the government can do with it is have a witness

02:34:30   8    testify how it was prepared, and where the information came

02:34:37   9    from, to just demonstrate, all right, that witness's testimony

02:34:42   10   about the timing of the events on this exhibit, but then the

02:34:48   11   jury is not going to be able to take it back with them, so it

02:34:52   12   won't be introduced into evidence as what we call a

02:34:55   13   substantive exhibit, all right, it is just to demonstrate the

02:34:58   14   in-court testimony, and then the government can use it during

02:35:03   15   its closing argument as well to show, you know, here is what

02:35:07   16   the evidence showed.

02:35:10   17         You can respond to it in closing, as well as during

02:35:13   18   the trial with facts, but they won't -- the jury won't be able

02:35:18   19   to take it back with them.

02:35:19   20         So what is your reaction to that?  Do you still have

02:35:26   21   an objection?

02:35:27   22         DEFENDANT BEY:  Yeah, but you say you are only going

02:35:29   23   to -- I do object to it.  But you said you are just going to

02:35:34   24   make it relevant just to asking the witness?

02:35:41   25         THE COURT:  Right.  It is only to demonstrate the

02:35:44  1   witness's testimony, that is why it is called demonstrative,

02:35:48  2   but it is not going to come in so the jury can take it back

02:35:51  3   with them and actually make decisions off of that exhibit. Do

02:35:55  4   you understand?

02:35:55  5         DEFENDANT BEY: If -- if --

02:35:57  6         THE COURT: Let me give you an example.

02:35:59  7         Let's say you wanted in closing arguments to insert

02:36:02  8   before the purchases, because you say you were making a

02:36:06  9   salary, and that some of the monies might have come from your

02:36:08  10  salary, if you put together a timeline that had your

02:36:13  11  paychecks, and then the purchase, then that would be a

02:36:17  12  demonstrative -- that could be a demonstrative piece of

02:36:21  13  evidence and then you could use it in closing, just like the

02:36:24  14  government can use this kind of timeline in favor of its case.

02:36:31  15  So that is the difference.

02:36:32  16        DEFENDANT BEY: But once it is introduced, it is

02:36:34  17  going to stick in their minds. Do you know what I am saying?

02:36:39  18        THE COURT: Right, but I am going to instruct them,

02:36:41  19  first of all, that it is a demonstrative exhibit only, and

02:36:45  20  demonstrative exhibits are only used to help explain the

02:36:50  21  witness's testimony, and then they won't have it back in

02:36:53  22  there.

02:36:53  23        But that is the point of demonstrative exhibits,

02:36:57  24  Mr. Bey, so that the jury has some sort of visual to help them

02:37:01  25  understand one side's case or the other.

02:37:04  1          And you can use some too.
02:37:07  2          DEFENDANT BEY:  Okay.  Okay.
02:37:09  3          THE COURT:  So for that purpose it is permissible, I
02:37:11  4  think.
02:37:12  5          DEFENDANT BEY:  Okay.
02:37:12  6          THE COURT:  So 52 will be allowed as a demonstrative
02:37:16  7  exhibit only.
02:37:24  8          And then -- I don't think we have much more to talk
02:37:32  9  about.
02:37:32  10          I don't think you submitted a witness list.
02:37:36  11          Do you plan to call anyone, Mr. Bey, to testify on
02:37:39  12  your own behalf?
02:37:39  13          DEFENDANT BEY:  Not as of right now.
02:37:41  14          Do I have to have it right now?
02:37:48  15          If I decide as the trial goes along I want to bring
02:37:51  16  in a witness, I can't bring that witness in then?
02:37:54  17          THE COURT:  Well, you can certainly propose a witness
02:37:56  18  that you have not identified before, but it is subject to a
02:38:03  19  whole bunch of rules.
02:38:04  20          DEFENDANT BEY:  Okay.
02:38:05  21          THE COURT:  So, for example, there are rules that
02:38:07  22  require you to identify before trial, and I don't think this
02:38:13  23  applies, but I'm just giving you examples like alibi
02:38:16  24  witnesses, or witnesses that are experts.
02:38:21  25          So there are rules that would require you to identify

02:38:26  1    someone beforehand, and if you don't have a good reason for
02:38:29  2    not doing that beforehand, then they can't testify.  Okay?
02:38:32  3              DEFENDANT BEY:  Okay.
02:38:33  4              THE COURT:  So I certainly urge you, if you have
02:38:35  5    anyone you are thinking of that could possibly testify on your
02:38:38  6    behalf to let us know about that.  Okay?
02:38:40  7              DEFENDANT BEY:  Okay.
02:38:41  8              THE COURT:  Do you have anyone in mind right now?
02:38:44  9              DEFENDANT BEY:  Not right now, Judge.
02:38:45  10             THE COURT:  Okay.
02:38:46  11             And then the -- can you remind me, did you call
02:38:52  12   witnesses at the last trial?
02:38:53  13             DEFENDANT BEY:  Um, yeah, I did.  I had one witness.
02:38:57  14             THE COURT:  That is right.
02:39:01  15             And the other important thing for you to know is it
02:39:05  16   is your responsibility to line them up, too, to be ready to
02:39:09  17   testify on time.
02:39:10  18             DEFENDANT BEY:  Yes.
02:39:10  19             THE COURT:  And you do have the power of the subpoena
02:39:14  20   to -- and there I would certainly urge you again to consult
02:39:18  21   with Mr. Fuentes if you want to try to issue and serve a
02:39:23  22   subpoena on someone.  But be forewarned, please, that we are
02:39:31  23   two weeks out from the trial, so you need to have even the
02:39:34  24   potential witnesses lined up, so we don't have to delay the
02:39:39  25   trial for you to scramble and find them.

02:39:42  1          Do you understand?

02:39:45  2          DEFENDANT BEY:  Yes, yes, I do.

02:39:47  3          THE COURT:  All right.

02:39:48  4          For jury selection, do you want me to explain how I

02:39:57  5  pick a jury?

02:39:57  6          DEFENDANT BEY:  Yes.

02:40:00  7          THE COURT:  So what we will do is we will call in

02:40:04  8  several dozen individuals, let's call it 36, I don't know what

02:40:10  9  the exact number will be, but it will be about 36 or so people

02:40:17  10  who are eligible to serve on a jury.

02:40:18  11          The way I will seat them is by number.  You will get

02:40:23  12  a list right on that morning, because the jury department

02:40:26  13  creates the list that morning.  You will get a list of juror

02:40:30  14  numbers for say 1 through 36, with their names on there, and

02:40:34  15  what I will do is I will have juror number 1 sit in the first

02:40:39  16  seat of the first row closest to me.

02:40:42  17          DEFENDANT BEY:  Okay.

02:40:42  18          THE COURT:  Then number 2 will sit to that person's

02:40:45  19  left.

02:40:46  20          DEFENDANT BEY:  Okay.

02:40:46  21          THE COURT:  And then 3, until we get to 7.

02:40:50  22          DEFENDANT BEY:  Okay.

02:40:51  23          THE COURT:  You see that?

02:40:51  24          DEFENDANT BEY:  Yes.

02:40:52  25          THE COURT:  And then the back row will be 8, will be

02:40:55　1　closest to me, the back row, to 14.

02:40:56　2　　　　　DEFENDANT BEY:  Okay.

02:40:57　3　　　　　THE COURT:  And I am telling you this because it

02:41:04　4　might help you to keep track of their answers during jury

02:41:10　5　selection if you make kind of a graphical or visual map of the

02:41:15　6　jury box.

02:41:15　7　　　　　DEFENDANT BEY:  Uh-huh.

02:41:16　8　　　　　THE COURT:  Then 15 will sit in the first row of the

02:41:20　9　gallery, the wooden bench, near that big screen TV near the

02:41:23　10　wall, that is 15.

02:41:24　11　　　　　DEFENDANT BEY:  Okay.

02:41:25　12　　　　　THE COURT:  It will be 15 through 22, so 22 will be

02:41:28　13　sitting in the first bench, but on the aisle.

02:41:31　14　　　　　DEFENDANT BEY:  Okay.

02:41:32　15　　　　　THE COURT:  And then -- no, it is 15 to 21, actually,

02:41:40　16　sorry 15 to 21.

02:41:45　17　　　　　Then 22 will sit in the second row of the gallery

02:41:46　18　against the wall, and it will be 22 to 28, and then 29 to 35

02:41:55　19　and so on.

02:41:58　20　　　　　Then they will have a letter from me to them, and

02:42:01　21　this is on the web site, saying please give me your background

02:42:04　22　information, where do you live, do you own or rent your house,

02:42:08　23　are you married and so on.

02:42:09　24　　　　　So juror Number 1 will give that information first,

02:42:13　25　and then juror Number 2, and 3, and so on.  And after they are

02:42:18   1   done giving us their background information, then I will ask
02:42:21   2   them additional questions.  And the parties have proposed some
02:42:25   3   additional questions, and I will decide which ones are
02:42:28   4   appropriate to ask, and then we will ask them additional
02:42:33   5   questions.
02:42:33   6           After they give answers to that, and a lot of those
02:42:36   7   answers we will probably take at the side bar so that all the
02:42:40   8   jurors don't hear what they have to say, then we will let
02:42:44   9   those jurors leave usually for lunch, but maybe just a break,
02:42:52  10   and then when we are alone here in the courtroom, without the
02:42:56  11   jurors in here, we will talk about any objections to any
02:43:00  12   potential juror that you think can't fairly sit in judgment of
02:43:05  13   you, and then I will knock those people out.
02:43:07  14           And then we will have -- you might remember the
02:43:10  15   peremptory challenges, right?
02:43:14  16           DEFENDANT BEY:  (Nodding head.)
02:43:15  17           THE COURT:  Where you get to pick 10 people and you
02:43:18  18   get to knock them out, they won't get to sit on the jury.
02:43:21  19           DEFENDANT BEY:  Okay.
02:43:22  20           THE COURT:  And the government will pick 6 and we
02:43:24  21   will knock them out.
02:43:26  22           DEFENDANT BEY:  (Nodding head.)
02:43:27  23           THE COURT:  And then we will pick one alternate, I
02:43:31  24   don't think we need two alternates for a trial of this
02:43:33  25   lengths.

02:43:34  1    We will pick one alternate, and they way we will do
02:43:35  2  that is, again, you will have one peremptory challenge and the
02:43:39  3  government will have one peremptory challenge, and then we
02:43:43  4  will have our 13 jurors.
02:43:44  5    12 regular, one alternate.
02:43:46  6    Any questions?
02:43:47  7    DEFENDANT BEY:  No.
02:43:47  8    MR. HOTALING:  Judge, just to make sure I am clear,
02:43:54  9  the questioning will be to the entire group as opposed to by
02:43:58 10  panel in the box?
02:44:00 11    THE COURT:  That is correct.  We will qualify the
02:44:03 12  entire pool.
02:44:04 13    MR. HOTALING:  Okay.
02:44:04 14    THE COURT:  I don't have anything else to show you,
02:44:07 15  unless you have seen it before --
02:44:09 16    Have you seen that computer system in the jury room
02:44:12 17  where they look at exhibits in electronic format?
02:44:18 18    DEFENDANT BEY:  No.
02:44:18 19    THE COURT:  The last trial did not involve that?
02:44:20 20    DEFENDANT BEY:  No, it didn't.
02:44:21 21    THE COURT:  We will do that in a moment, I will show
02:44:25 22  you, but we don't need to be on the record for that.
02:44:28 23    DEFENDANT BEY:  Okay.
02:44:29 24    THE COURT:  So in the jury room there is a computer
02:44:31 25  system that lets them look at exhibits on the screen, just

02:44:34  1  like this, and they look at the digital exhibits.

02:44:37  2      For you it is okay if you introduce paper exhibits,

02:44:40  3  we will give them paper copies, you don't have to worry about

02:44:45  4  putting electronic versions together.  But the government will

02:44:49  5  be required to submit an electronic version.  So I will show

02:44:57  6  you that when we are done.

02:44:57  7      Do you have anything you would like to ask questions

02:44:57  8  about?

02:45:00  9      Mr. Bey?

02:45:00  10     DEFENDANT BEY:  No, Judge.

02:45:01  11     THE COURT:  Okay.

02:45:02  12     Does the government?

02:45:03  13     MR. HOTALING:  Judge, one thing.

02:45:04  14     The last time we were together we talked about

02:45:07  15  stipulations, and we provided a copy of a stipulation,

02:45:11  16  additional materials that we submitted to Mr. El Bey, and then

02:45:14  17  we did it again today.

02:45:18  18     Actually, I think given your ruling with regard to

02:45:20  19  the 902.11, and --

02:45:23  20     Do you have copy of those, Judge?

02:45:25  21     THE COURT:  Yes.

02:45:25  22     MR. HOTALING:  I think stipulation Number 1 is moot,

02:45:28  23  since exhibits 1 through 51 are essentially the business

02:45:34  24  records, both the IRS records, the bank records, as well as

02:45:41  25  the records connected with purchases of different cars.

02:45:48  1      So again, I think based on the ruling that Your Honor

02:45:52  2  has already entered, I think that this stipulation is moot,

02:45:55  3  but I again would proffer to Mr. El Bey stipulation Number 2,

02:46:01  4  which we actually had talked about and negotiated back and

02:46:06  5  forth over the last series of weeks, dealing essentially with

02:46:11  6  Mr. El Bey's name changes, various name changes, as well as

02:46:15  7  the fact that he received income through the Postal Service.

02:46:21  8  We modified that at Mr. El Bey's request.

02:46:24  9      So since we are all together, I thought if we could

02:46:27  10 get resolution on the stipulation that might be helpful.

02:46:30  11     THE COURT:  Mr. Bey, it is up to you whether you want

02:46:34  12 to stipulate or not.

02:46:35  13     Are you okay with the stipulation now or?

02:46:37  14     DEFENDANT BEY:  Well, you know what, Judge, I will

02:46:40  15 look over it, but I don't think my job has anything to do with

02:46:44  16 it.  I don't want to bring the fact that I work for the post

02:46:46  17 office, that has anything to do with is this case, what they

02:46:50  18 want to bring it in.

02:46:51  19     I don't care about them using the names, I am not

02:46:54  20 running or hiding from anybody.  I have nothing to hide.

02:46:58  21 Those were religious reasons.  But I don't think bringing my

02:47:02  22 job into this makes a difference.

02:47:05  23     THE COURT:  Are you concerned about it being the

02:47:07  24 Postal Service or any reference to your job?

02:47:10  25     DEFENDANT BEY:  Well, I have 35 years at the Postal

02:47:13  1    Service, and I am concerned about that.  It has nothing to do

02:47:16  2    with what we are here for, so I do not know why they are

02:47:21  3    bringing that in.

02:47:21  4            THE COURT:  I thought you had wanted to introduce the

02:47:24  5    fact that you had income because you wanted to disconnect

02:47:29  6    the --

02:47:29  7            DEFENDANT BEY:  I wanted to sat that I have a job, I

02:47:33  8    didn't want everyone to know where I worked; that is not their

02:47:35  9    business.  That I did have an income, I was gainfully

02:47:40  10   employed.  I wasn't sticking up nobody or trying to steal

02:47:44  11   nothing from the government.  My thing is, I don't want them

02:47:46  12   to think that I was just here trying to rob and steal from

02:47:48  13   someone, that is not what ever did in my life.  I want them to

02:47:53  14   know that I had a job and that I was bringing in income, I was

02:47:57  15   working a productive -- just like anyone else.  I wasn't

02:48:00  16   trying to steal anything or.

02:48:01  17           I don't want them to think -- what I am saying is

02:48:06  18   when you bring in the fact that I work for the Postal Service,

02:48:09  19   you know, I think it -- to me, it looks bad, you know.  How do

02:48:16  20   people make -- I mean, like, that man had a decent income and

02:48:22  21   he is going out and -- that's irrelevant.  I don't think it is

02:48:25  22   important.

02:48:25  23           THE COURT:  It is up to you whether you want to

02:48:27  24   stipulate or not.

02:48:28  25           So if you don't want that last sentence in there,

02:48:31  1    then you --
02:48:31  2          DEFENDANT BEY:  I don't want it in there.
02:48:33  3          MR. HOTALING:  And Judge, the only reason we did it,
02:48:36  4    and again, I don't want to get into too much, but at the last
02:48:39  5    trial, in order to prove up -- because there was a relevance
02:48:42  6    in terms of establishing an income stream, that some of the
02:48:45  7    documents that we produced from the Postal Service indicated
02:48:49  8    that Mr. El Bey was on disability status.  And there was some
02:48:53  9    concern about the fact that he was on disability getting in
02:48:57  10   front of the jury.
02:48:57  11         If he doesn't care about that and that is the way he
02:49:00  12   wants to do it, go that way, that is his decision.
02:49:04  13         We are trying to sanitize it in such a way to make it
02:49:07  14   completely fair to Mr. El Bey.  That's our intention.  If he
02:49:10  15   doesn't want it, fine.
02:49:12  16         DEFENDANT BEY:  Where my income comes from, that is
02:49:15  17   no one's business, as long as it is legal, or lawful, I should
02:49:19  18   say.
02:49:21  19         And so everything I was doing was lawful, and I don't
02:49:24  20   think -- I don't think it is anyone's business as long as they
02:49:29  21   know I had an income lawfully coming in.
02:49:32  22         Do you know what I am saying?
02:49:36  23         THE COURT:  Let me just first make sure I understand.
02:49:39  24   The government is intending to prove up that the defendant had
02:49:46  25   an income or not intending to prove that up?

02:49:49    1          MR. HOTALING:  That he did have an income through the

02:49:53    2   Postal Service.  And the documents that we have, and have

02:49:57    3   received through the course of the case, indicate that much of

02:50:00    4   that was because of a disability that Mr. El Bey was on.

02:50:04    5          THE COURT:  But just -- imagine for a moment that

02:50:07    6   Mr. Bey is not going to introduce any evidence about his job.

02:50:13    7   Would you?

02:50:13    8          MR. HOTALING:  I think so.

02:50:14    9          THE COURT:  Okay.

02:50:18   10          And so the records that you would introduce refer to

02:50:25   11   his disability.

02:50:26   12          MR. HOTALING:  Yes.

02:50:27   13          THE COURT:  Okay.

02:50:31   14          DEFENDANT BEY:  I don't even see why that is

02:50:34   15   relevant, Judge.

02:50:34   16          THE COURT:  And they are not saying that the

02:50:36   17   disability part is relevant.  But they are saying that they

02:50:39   18   want to prove up --

02:50:40   19          You want to prove up not just the fact of but the

02:50:44   20   amount of income?

02:50:45   21          MR. HOTALING:  Yes.

02:50:46   22          THE COURT:  That again is relevant to the financial

02:50:49   23   motive, Mr. Bey.  So I think what they were trying to do with

02:50:52   24   this stipulation, and again, it's up to you, you don't have to

02:50:56   25   stipulate, is to refer to the fact that you did have income

02:51:01　1　through the U.S. Postal Service, but without mentioning the

02:51:05　2　disability part of it.

02:51:06　3　　　　　So if there is no stipulation on that --

02:51:11　4　　　　　DEFENDANT BEY:  But the Postal Service is not paying

02:51:14　5　me my disability, that is what I am saying, it is not

02:51:17　6　relevant.

02:51:17　7　　　　　THE COURT:  Well, the fact that you have some income

02:51:21　8　but not in the amounts of -- that would according to the

02:51:25　9　government support the purchases that were made after the

02:51:29　10　issuance of the refund checks, that is relevant.

02:51:33　11　　　　　DEFENDANT BEY:  But --

02:51:34　12　　　　　THE COURT:  Again, you don't have to -- if you don't

02:51:37　13　want to stipulate, then that's fine.

02:51:39　14　　　　　DEFENDANT BEY:  Well, see, Judge, that is not true

02:51:41　15　though.

02:51:41　16　　　　　THE COURT:  What is not true?

02:51:42　17　　　　　DEFENDANT BEY:  What you just said about not getting

02:51:45　18　as much while I was on disability.  That is not true.

02:51:48　19　　　　　THE COURT:  And I -- I am not here to say whether it

02:51:51　20　is or isn't true.

02:51:52　21　　　　　DEFENDANT BEY:  That is why I said it wasn't

02:51:55　22　relevant, because they really don't know.  You know, getting

02:52:06　23　80 percent of your income and not having to put gas in and go

02:52:10　24　back and forth to work and lunch and all of that, everything

02:52:12　25　is --

02:52:13  1          Do you know what I am saying?

02:52:15  2          THE COURT:  It will be up to the jury to decide

02:52:18  3  whether those amounts can support the purchases that were made

02:52:22  4  at or around the time of the issuance of the refund checks.

02:52:26  5  So I am not going to decide that other than to say that the

02:52:29  6  evidence is relevant.

02:52:31  7          The disability part of it, even the government is

02:52:34  8  saying that they don't have to prove that part up, and so you

02:52:39  9  should remove that from any exhibits.

02:52:41  10         MR. HOTALING:  I will go through that.

02:52:43  11         THE COURT:  So just remove the disability reference,

02:52:46  12  so that that doesn't enter into it.

02:52:50  13         But otherwise, it is relevant, so -- the fact of

02:52:52  14  income and the amount.

02:52:56  15         So it is all right to remove that from the

02:52:58  16  stipulation, okay, that is your choice, Mr. Bey.

02:53:01  17         So why don't you remove that from the stipulation,

02:53:04  18  and then if we are left with the name change part, if Mr. Bey

02:53:07  19  is comfortable with that, then maybe he can sign it today.

02:53:15  20         But again, that is up to you whether you want to sign

02:53:18  21  a stipulation.

02:53:19  22         So I think that concludes this part of it.  If you

02:53:23  23  want to ask him to wait as you edit that and --

02:53:27  24         DEFENDANT BEY:  I would rather go home and look at it

02:53:30  25  and see if everything is -- you know, the stipulation.

02:53:33    1          THE COURT:  That is your choice.

02:53:34    2          DEFENDANT BEY:  Yes.

02:53:34    3          THE COURT:  All right.

02:53:35    4          We are concluded.

            5

            6          (Proceedings concluded.)

            7

            8

            9

           10                C E R T I F I C A T E

           11

           12

           13          I certify that the foregoing is a correct transcript

           14   from the record of proceedings in the above-entitled matter.

           15

           16   /s/Krista Burgeson, CSR, RMR, CRR     January 21, 2019
                Federal Official Court Reporter       Date
           17

           18

           19

02:53:54   20

02:53:54
02:53:54   21

           22

           23

           24

           25